Joe W. (Billy) **FISHER**, et al., Plaintiffs,

v.

**CHEVRON CHEMICAL COMPANY**, et al., Defendants.

No. 88–4489–CV–C–9.

United States District Court, W.D. Missouri, C.D.

July 7, 1989.

---

Louis J. Leonatti and Jerome W. Seigfreid, Seigfreid, Runge, Leonatti & Pohlmeyer, Mexico, Mo., for plaintiffs.

Fairfax Jones, Biggs & Hensley, P.C., Clayton, Mo., for Chevron Chemical Co.

Thomas B. Alleman and Millie M. Donohoe, Niewald, Waldeck, Norris & Brown, Kansas City, Mo., for Estech, Inc. and Beatrice Foods, Inc.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS ESTECH AND BEATRICE FOODS' NOVEMBER 21, 1988, MOTION TO DISMISS

BARTLETT, District Judge.

On October 27, 1988, plaintiffs Joe and Susan Fisher filed a complaint against defendants Chevron Chemical Company (Chevron), Estech, Inc. (Estech) and Beatrice Foods, Inc. (Beatrice). Plaintiffs, who are farmers, allege that a neighbor who owns farmland adjacent to their land hired a spray plane to spray his crops and that the herbicide spray which contained the chemical Paraquat drifted onto plaintiffs' land causing personal injury and property damage. Plaintiffs allege that Chevron manufactured, distributed and sold the Paraquat that injured plaintiffs. They allege that Estech acquired (and is therefore answerable for the liability of) Shelby–Macon Fertilizer Company which sold and distributed Paraquat. Plaintiffs assert that Beatrice thereafter assumed the liabilities of Estech. Neither the neighbor nor the spray plane company are parties to this case. Jurisdiction is based solely on diversity.

Plaintiffs assert that defendants are liable under "one or all of the following theories:" 1) Chevron sold the Paraquat in a defective condition, unreasonably dangerous when put to a reasonably anticipated use; 2) Chevron failed to give an adequate warning of the dangers of Paraquat; 3) Chevron furnished Paraquat to Shelby–Macon for resale without warning Shelby–Macon or plaintiffs of the dangerous condition of the Paraquat; 4) Chevron sold Paraquat to Shelby–Macon which sold it to plaintiffs' neighbor who arranged to have it applied to his land and defendants failed to warn plaintiffs of the dangers posed by Paraquat; 5) Chevron is strictly liable for damages caused by aerial spraying which is an inherently or abnormally dangerous activi-

ty; and 6) Chevron failed to warn or take precautions to prevent Praquat "from being used as an aerial spray or warn against its use on congested or inappropriate areas or at inappropriate times and in inappropriate weather conditions." Complaint at 5–7.

Plaintiffs previously filed this case as No. CV 682–23CC in the Circuit Court of Monroe County, Missouri, and voluntarily dismissed it on November 4, 1987. The case was refiled within one year as authorized by the appropriate statute of limitations, Mo.Rev.Stat. § 516.230.

On November 22, 1988, Chevron filed an answer. On November 21, 1988, Estech and Beatrice filed a motion to dismiss on the grounds that: 1) plaintiffs failed to pay costs as is proper under Rule 41(d), Federal Rules of Civil Procedure, when the circuit court case was previously dismissed; and 2) plaintiffs' state common law tort actions are preempted by the Federal Insecticide, Fungicide and Rodenticide Act (FIFRA), 7 U.S.C. § 136, *et seq.*

On December 2, 1988, plaintiffs filed opposition to the motion to dismiss arguing that 1) Rule 41(d) does not permit me to *dismiss* an action for failure to pay costs of a previous action and 2) plaintiffs' state common law claims are not preempted or, alternatively, are not *all* preempted.

## I. *Plaintiffs' Complaint Will Not be Dismissed or Stayed Under Rule 41(d)*

Rule 41(d) provides:

If a plaintiff who has once dismissed an action in any court commences an action based upon or including the same claim against the same defendant, the court may make such order for the payment of costs of the action previously dismissed as it may deem proper and may stay the proceedings in the action until the plaintiff has complied with the order.

Defendants argue that on this basis plaintiffs' complaint should be dismissed or stayed. Defendants do not present any details to support their request such as the amount of costs at issue or whether plaintiffs have, in fact, received a cost bill from the circuit court. Plaintiffs state they did

not receive a cost bill from the circuit court until after defendants' motion was filed.

Because defendants have not presented an adequate factual basis upon which to apply Rule 41(d) and because I am persuaded that Rule 41(d) does not authorize me to dismiss the case, I decline to either stay or dismiss this case.

II. *Plaintiffs' Common Law Claims Based Upon Failure to Warn or Inadequate Warning Are Preempted*

In the seminal case of *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 210–11, 6 L.Ed. 23 (1824), the Supreme Court ruled that the Supremacy Clause, U.S. Const. Art. VI, gives Congress authority to legislate in preemption of state law. In *Louisiana Public Service Commission v. Federal Communications Commission,* 476 U.S. 355, 368–69, 106 S.Ct. 1890, 1898–99, 90 L.Ed.2d 369, 381–82 (1986), the Court summarized the principles of preemption:

> Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, *Jones v. Rath Packing Co.,* 430 U.S. 519, 51 L.Ed.2d 604, 97 S.Ct. 1305 (1977), when there is outright or actual conflict between federal and state law, *e.g., Free v. Bland,* 369 U.S. 663, 8 L.Ed.2d 180, 82 S.Ct. 1089 (1962), where compliance with both federal and state law is in effect physically impossible, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 10 L.Ed.2d 248, 83 S.Ct. 1210 (1963), where there is implicit in federal law a barrier to state regulation, *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 77 L.Ed.2d 490, 103 S.Ct. 2890 (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 91 L.Ed. 1447, 67 S.Ct. 1146 (1947), or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Hines v. Davidowitz,* 312 U.S. 52, 85 L.Ed. 581, 61 S.Ct. 399 (1941).

The gist of preemption is whether Congress did (expressly) or meant to (impliedly) displace state law or state law concepts in enacting federal law. *Palmer v. Liggett Group, Inc.,* 825 F.2d 620, 625–26 (1st Cir.1987). The burden of demonstrating preemption falls upon defendants. *See Silkwood v. Kerr–McGee Corp.,* 464 U.S. 238, 255, 104 S.Ct. 615, 625, 78 L.Ed.2d 443 (1984).

In FIFRA, Congress has provided a comprehensive system for the registration and labeling of pesticides. The parties agree that Paraquat is subject to the regulatory provisions of FIFRA. Under FIFRA, the Environmental Protection Agency (EPA) is directed to register a pesticide if the EPA determines that "it will perform its intended function without unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5)(C). When a pesticide is registered, the manufacturer must submit the proposed label to the EPA for approval. The label must be "adequate to protect health and the environment," *see* 7 U.S.C. § 136(q)(1)(G), and "likely to be read and understood...." *See* 7 U.S.C. § 136(q)(1)(E).

Congress has expressly stated its intent to preempt any state labeling or packaging requirements different from or additional to those mandated by FIFRA. (However, Congress has allowed states to have a greater role in regulating the *sale* and *use* of pesticides.)

> (a) A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.
>
> (b) Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v(a), (b).

### A. Express Preemption

■ Although § 136v(b) shows express congressional intent to preempt state labeling regulations, it does not *expressly* evidence intent to preempt state common law tort claims arising from allegedly inadequate labels and warnings. In reaching

this conclusion, I rely on the general presumption against preemption (see *Maryland v. Louisiana*, 451 U.S. 725, 101 S.Ct. 2114, 2129, 68 L.Ed.2d 576 (1981)) and also Congress's failure to refer specifically to state common law remedies in § 136v(b) as it has in other statutes.[1]

Where there is no express preemption, the Supreme Court has turned to principles of implied preemption in evaluating whether a federal statutory scheme preempts state common law remedies. *See, e.g., Silkwood v. Kerr–McGee Corp.*, 464 U.S. 238, 104 S.Ct. 615, 78 L.Ed.2d 443 (1984); *Chicago & North Western Transportation Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 101 S.Ct. 1124, 67 L.Ed.2d 258 (1981).

### B. Implied Preemption

1. *FIFRA Does Not "Occupy the Field" Encompassing Every Aspect of the Relationship Between Pesticides and Damages Arising From Their Use*

■ Applying the principles of implied preemption, the first issue is whether Congress intended "to occupy the field" relating to pesticides and injuries arising from their use to the exclusion of state common law actions based on failure to warn. *See Cipollone v. Liggett Group, Inc.*, 789 F.2d 181, 186 (3rd Cir.1986) (applying similar analysis in tobacco litigation). In FIFRA, Congress intended to occupy *a* field (regulation of labeling). However, Congress did not intend to preempt all state common law claims for damages from the sale and use of pesticides. *See* 7 U.S.C. § 136v(a) authorizing states to regulate the sale and use of pesticides more stringently than federal law.

Therefore, the scheme created by FIFRA is not "so pervasive" or the federal interest "so dominant" as to demonstrate an intent to preempt all state law claims. *See Rob-*

*erts v. Dow Chemical Co.*, 702 F.Supp. 195, 199 (N.D.Ill.1988).

2. *Missouri Common Law Failure to Warn Claims Conflict With the Purposes of FIFRA*

■ The second issue to be addressed in the implied preemption analysis is the extent to which plaintiffs' state law claims "actually conflict" with FIFRA. *See Cipollone*, 789 F.2d at 186–87; *Fitzgerald v. Mallinckrodt, Inc.*, 681 F.Supp. 404, 406–07 (E.D.Mich.1987). In order to determine whether a conflict exists between state and federal law, I must examine first the purpose of the federal law and, second, the effect of the operation of the state law on these purposes. *Cipollone*, 789 F.2d at 187.

The principle purpose of FIFRA is to protect consumers by keeping unhealthy or unsafe pesticides off the market and by preventing deceptive labeling. *See National Agricultural Chemicals Ass'n v. Rominger*, 500 F.Supp. 465, 470 (E.D.Cal.1980), citing *Florida Lime*, 83 S.Ct. at 1219. Congress sought to achieve this goal by regulating the sale, use and labeling of pesticides. As to FIFRA's labeling provisions, Congress has stated in § 136v(b) that its goals will be undermined by state law requirements which add to or differ from federal labeling regulations.

In arguing that the state common law remedies they seek to use in the case do not interfere with the federal purpose behind FIFRA, plaintiffs rely on *Ferebee v. Chevron Chemical Co.*, 736 F.2d 1529 (D.C.Cir.1984), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1985). There, the court although recognizing that "FIFRA does not allow states directly to impose additional labeling requirements," still allowed plaintiff to assert state tort

---

1. Examples of statutes that include a provision explicitly preempting state common law remedies include 12 U.S.C. §§ 1715z–17(a), 1715z–18(e) (Supp.1989) (Domestic Housing and International Recovery and Financial Stability Act); 17 U.S.C. § 301(a) (Copyright Act of 1976) and 29 U.S.C. § 1144(a), (c)(1) (1982) (Employee Retirement Income Security Act).

   Just as Congress could have included a reference to preemption of state common law in

§ 136v(b), it could also have included a "savings clause" explicitly preserving the continued vitality of common law such as that in the Occupational Safety and Health Act of 1970, 29 U.S.C. § 653(b)(4) (1982). Thus, lack of reference to preemption of state common law in ¶ 136v(b) is significant only because of the presumption against preemption.

claims for injuries arising from inadequate labeling of a pesticide. The court reasoned that FIFRA was "regulatory" while the state tort remedies at issue were "compensatory."

> The verdict itself [compensating plaintiff for injuries resulting from a defective label] does not command Chevron to alter its label—the verdict merely tells Chevron that, if it chooses to continue selling paraquat in Maryland, it may have to compensate for some of the resulting injuries. That may in some sense impose a burden on the sale of paraquat in Maryland, but it is not equivalent to a direct regulatory command that Chevron change its label. Chevron can comply with both federal and state law by continuing to use the EPA-approved label and by simultaneously paying damages to successful tort plaintiffs such as Mr. Ferebee.
>
> .    .    .    .    .
>
> We ... hold that, if a state chooses to restrict pesticide use by requiring that the manufacturer compensate for all injuries or for some of these injuries resulting from the *use* of a pesticide, federal laws stand as no barrier.... As a result, Maryland is entitled to control the use of paraquat for compensatory aims by holding Chevron liable for injuries that could have been prevented by a more adequate label.

*Ferebee*, 736 F.2d at 1541 (emphasis in original). *See also Roberts v. Dow Chemical Co.*, 702 F.Supp. 195 (N.D.Ill.1988) (adopting reasoning and result of *Ferebee* ).

Defendants rely on *Fitzgerald v. Mallinckrodt, Inc.*, 681 F.Supp. 404 (E.D.Mich. 1987) where the court examined FIFRA and held that plaintiff's state law claims based on negligent labeling and failure to warn were preempted. The court there specifically rejected the reasoning of *Ferebee* and adopted the reasoning of *Palmer v. Liggett Group, Inc.*, 825 F.2d 620 (1st Cir. 1987), a cigarette warning case.

The *Fitzgerald* court quoted extensively from *Palmer:*

> The preemption clause of the [Federal Cigarette Labeling and Advertising] Act expressly prohibits "state law" not merely "statutory law" from imposing any "requirement or prohibition" different from the Act's warning label. 15 U.S.C. § 1334. *If a manufacturer's warning that complies with the Act is found inadequate under a state tort theory, the damages awarded and verdict rendered against it can be viewed as state regulation: the decision effectively compels the manufacturer to alter its warning to conform to different state law requirements as "promulgated" by a jury's findings....* This challenge to the federal warning label's sufficiency— and the confusion it would engender— surely contravenes the Act's policy of uniform labeling.
>
> The District Court held that an award of damages "would have only an indirect effect on defendant's labeling and advertising practices." [*Palmer v. Liggett Group, Inc.,*] 633 F.Supp. [1171] at 1177 [ (1986) ]. The Palmers disingenuously maintain that any monetary damages awarded would not compel a manufacturer to change its label for, after all, "the choice of how to react is left to the manufacturer." This "choice of reaction" seems akin to the free choice of coming up for air after being underwater. *Once a jury has found a label inadequate under state law, and the manufacturer liable for damages for negligently employing it, it is unthinkable that any manufacturer would not immediately take steps to minimize its exposure to continued liability. The most obvious change it can take, of course, is to change its label.* Effecting such a change in the manufacturer's behavior and imposing such additional warning requirements is the very action preempted by § 1334 of the Act. Indeed, *it arrogates to a single jury the regulatory power explicitly denied to all fifty states' legislative bodies.*

*Fitzgerald*, 681 F.Supp. at 407, *quoting Palmer*, 825 F.2d at 627–28 (emphasis added by *Fitzgerald* court).

Adopting the reasoning of *Palmer*, the *Fitzgerald* court concluded:

FIFRA expressly provides that no state may impose *"any* requirement for labeling or packaging *in addition to or different from* those required under this Act." 7 U.S.C. § 136v(b) (emphasis added). As the *Palmer* court noted, any state law tort recovery based on a failure to warn theory, would abrogate Congress' intent to provide uniform regulations governing the labeling of pesticides.

*Fitzgerald,* 681 F.Supp. at 407.

The *Fitzgerald* court's reasoning is persuasive while *Ferebee* seems to be justifying weakly a result. In *Roberts v. Dow Chemical Co.*, 702 F.Supp. 195, 198 (N.D. Ill.1988), the court criticized *Fitzgerald* for applying the reasoning of *Palmer v. Liggett Group, Inc.*, 825 F.2d 620 (1st Cir. 1987), a cigarette labeling case, to a FIFRA case. In the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331, *et seq.*, Congress prescribes the exact warning label to be placed on every package of cigarettes. In FIFRA, Congress permits each manufacturer to draft a warning label for each product for EPA approval. However, this is a distinction without significance; both acts expressly prohibit states from regulating any aspect of labeling. Allowing common law claims for failure to warn would conflict with Congress' express provision in 7 U.S.C. § 136v(b) that the states "shall not impose ... any requirements for labeling...." Therefore, plaintiffs' common law claims for failure to adequately warn (complaint ¶ 14(b), (c), (d), (f)) are preempted because they conflict with FIFRA.

III. *Plaintiffs' Common Law Claims Not Based Upon Failure to Warn or Inadequate Warning Are Not Preempted*

In addition to their failure to warn claims, plaintiffs claim that 1) the Paraquat when sold by Chevron "was in a defective condition, unreasonably dangerous when put to its reasonably anticipated use," and 2) "plaintiffs were damaged as a direct result of defendants' participating in [aerial spraying which is an] inherently or abnormally dangerous activity and defendants are strictly liable" for plaintiffs' damages. Neither party addresses whether these claims are preempted.

In § 24(a), FIFRA specifically allows a state to "regulate the *sale* or *use* of any federally registered pesticide...." (Emphasis added.) Given this provision, I do not see a conflict between the purpose of FIFRA and the operation of plaintiffs' two remaining state common law theories. Because I previously concluded that FIFRA does not evidence congressional intent to "occupy the field" relating to pesticides and injuries arising from their use, plaintiffs' two remaining common law claims are not preempted.

Accordingly, it is hereby ORDERED that:

1) defendants Estech and Beatrice's November 21, 1988, motion to dismiss ¶ 14(b), (c), (d) and (f) of plaintiffs' complaint is granted; and

2) defendants' Estech and Beatrice's November 21, 1988, motion to dismiss ¶ 14(a) and (e) of plaintiffs' complaint is denied.