Sharon L. REUTZEL and Myron
O. Reutzel, Plaintiffs,

v.

SPARTAN CHEMICAL COMPANY,
A Corporation, Defendant.

Emcasco Insurance Company,
(42–6070764), Intervenor.

No. C 92–3075.

United States District Court,
N.D. Iowa,
Central Division.

Oct. 6, 1995.

Michael J. Carroll of Dwight W. James & Associates, Des Moines, Iowa, for plaintiffs.

L.W. Rosebrook of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, Iowa, for defendant Spartan Chemical.

Jill M. Augustine of Employers Mutual Insurance Company, Des Moines, Iowa, for intervenor Emcasco Insurance Co.

### ORDER REGARDING MOTION FOR SUMMARY JUDGMENT

BENNETT, District Judge.

### TABLE OF CONTENTS

I. INTRODUCTION AND BACKGROUND ................................. 1275
II. FINDINGS OF FACT .................................................. 1276
III. STANDARDS FOR SUMMARY JUDGMENT ............................. 1276
IV. LEGAL ANALYSIS .................................................... 1278
   A. The Preemption Doctrine ........................................ 1278
   B. The History of FIFRA and Preemption under FIFRA ................. 1279
   C. Prior Case Law on FIFRA Preemption ............................. 1279
   D. Claims Preempted by FIFRA ..................................... 1280
      1. The Reutzels' Claims for Relief under Strict Liability ............... 1281
      2. The Reutzels' Claims for Relief Alleging Negligence ................. 1282
      3. The Reutzels' Claims for Breach of Warranty ...................... 1282
   E. Estoppel ....................................................... 1283
V. CONCLUSION ........................................................ 1284

The sole issue raised by Defendant's motion for partial summary judgment is whether the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq. preempts all of Plaintiff's state law claims because they are allegedly premised on inadequate labeling of a product whose label is approved under FIFRA. Plaintiffs' resistance to the motion raises the related issue of whether a party may be estopped from asserting FIFRA preemption to the extent that it withheld material facts from the regulating agency.

### I. INTRODUCTION AND BACKGROUND

Plaintiffs Sharon L. Reutzel and Myron O. Reutzel ("The Reutzels") filed their complaint against Defendant Spartan Chemical Company, Inc. ("Spartan Chemical") on September 11, 1992. First, in count I of the

complaint, the Reutzels allege a state law claim for strict liability concerning several unnamed Spartan Chemical cleaning products. Count II of the complaint contains a state law negligence claim concerning the same unnamed Spartan Chemical cleaning products. In count III, the Reutzels assert a state law claim for breach of warrant concerning a number of unnamed Spartan Chemical cleaning products.

Spartan Chemical filed a motion for partial summary judgment seeking dismissal of the Reutzels' state law claims on the ground that these claims are premised upon a showing of inadequate labeling. Spartan Chemical argues that such claims are expressly preempted by FIFRA, 7 U.S.C. § 136v. Since the filing of the motion for summary judgment, the scope of Plaintiffs' case has been narrowed to Spartan Chemical's product SparCling, an acid cleaner formulated for cleaning ceramic tile and grout. The Reutzels assert in their resistance that Spartan Chemical has withheld information required of it concerning its product SparCling and therefore should be estopped from receiving preemption protection.

A hearing on Spartan Chemical's Motion for Partial Summary Judgment was held on September 29, 1995. At the hearing the Reutzels were represented by Michael J. Carroll of Dwight W. James & Associates, Des Moines, Iowa. Defendant Spartan Chemical was represented by L.W. Rosebrook of Ahlers, Cooney, Dorweiler, Haynie, Smith & Allbee, P.C., Des Moines, Iowa. Intervenor Emcasco Insurance Company was represented by Jill M. Augustine of Employers Mutual Insurance Company, Des Moines, Iowa. This matter is now deemed fully submitted.

## II. FINDINGS OF FACT

For the purposes of this summary judgement motion only, the court finds the following facts:

Since the early the 1970's, pursuant to FIFRA, Spartan Chemical has been required to apply to the Environmental Protection Agency ("EPA") for registration and approval of all of its chemical products making claims to be bacteriocidal, virucidal, or fungi-cidal. One of Spartan Chemical's products required to be registered with the EPA is SparCling. SparCling was first registered with the EPA in 1982, and has been continually registered since that time. Until 1986, Spartan Chemical used BBA Vielex Mint # 805104 as the fragrance in SparCling. In 1986 Spartan Chemical switched to Alpine's Mint Fragrance # 139–983 as the exclusive fragrance for SparCling. Spartan Chemical itself has not performed any toxicity testing on Alpine's Mint # 139–983.

Plaintiff Sharon Reutzel commenced employment with the Sentral Community School District ("School District") in 1988. In the summer of 1990, the School District began to use Spartan cleaning products. In February 1991, Sharon suffered an allergic reaction after using Spartan Chemical cleaning products. In August 1991, Sharon was exposed to Spartan cleaning products while visiting the Spencer Community Hospital and suffered an allergic reaction. In late January 1993, after being exposed to Spartan Chemical cleaning products while visiting the Pudre Valley Hospital, Sharon suffered an allergic reaction.

## III. STANDARDS FOR SUMMARY JUDGMENT

■ The Eighth Circuit Court of Appeals recognizes "that summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions,* 900 F.2d 1234, 1238 (8th Cir.1990). On the other hand, the Federal Rules of Civil Procedure have authorized for nearly 60 years "motions for summary judgment upon proper showings of the lack of a genuine, triable issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). Thus, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Wabun–Inini,* 900 F.2d at 1238 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986));

*Hartnagel v. Norman,* 953 F.2d 394, 396 (8th Cir.1992).

■ The standard for granting summary judgment is well established. Rule 56 of the Federal Rules of Civil Procedure states in pertinent part:

Rule 56. Summary Judgment

(b) For Defending Party. A party against whom a claim ... is asserted ... may, at any time, move for summary judgment in the party's favor as to all or any part thereof.

(c) Motions and Proceedings Thereon. ... *The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*

Fed.R.Civ.P. 56(b) & (c) (emphasis added); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Beyerbach v. Sears,* 49 F.3d 1324, 1325 (8th Cir.1995); *Munz v. Michael,* 28 F.3d 795, 798 (8th Cir.1994); *Roth v. U.S.S. Great Lakes Fleet, Inc.,* 25 F.3d 707, 708 (8th Cir.1994); *Cole v. Bone,* 993 F.2d 1328, 1331 (8th Cir.1993); *Woodsmith Publishing Co. v. Meredith Corp.,* 904 F.2d 1244, 1247 (8th Cir.1990); *Wabun–Inini,* 900 F.2d at 1238 (citing Fed.R.Civ.P. 56(c)).[1] A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, here the Reutzels, and give them the benefit of all reasonable inferences that can be drawn from the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *Munz v. Michael,* 28 F.3d 795, 796 (8th Cir.1994); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994); *Johnson v. Group Health Plan, Inc.,* 994 F.2d 543, 545 (8th Cir.1993); *Burk v. Beene,* 948 F.2d 489, 492 (8th Cir.1991); *Coday v. City of Springfield,* 939 F.2d 666, 667 (8th Cir.1991), *cert. denied,* 502 U.S. 1094, 112 S.Ct. 1170, 117 L.Ed.2d 416 (1992).

■ Procedurally, the moving party, Spartan Chemical, bears "the initial responsibility of informing the district court of the basis for their motion and identifying those portions of the record which show lack of a genuine issue." *Hartnagel,* 953 F.2d at 395 (citing *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553); *see also Reed v. Woodruff County, Ark.,* 7 F.3d 808, 810 (8th Cir.1993). Spartan Chemical is not required by Rule 56 to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

■ "When a moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1355. The Reutzels are required under Rule 56(e) to go beyond the pleadings, and by affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *McLaughlin v. Esselte Pendaflex Corp.,* 50 F.3d 507, 511 (8th Cir.1995); *Beyerbach,* 49 F.3d at 1325. Although "direct proof is not required to create a jury question, ... to avoid summary judgment, 'the facts and circumstances relied upon must attain the dignity of substantial evidence and must not be such as merely to create a suspicion.'" *Metge v. Baehler,* 762 F.2d 621, 625 (8th Cir.1985) (quoting *Impro Prods., Inc. v. Herrick,* 715 F.2d 1267, 1272 (8th Cir.1983), *cert. denied,* 465 U.S. 1026, 104 S.Ct. 1282, 79 L.Ed.2d 686 (1984)), *cert. denied sub nom. Metge v. Bankers Trust Co.,* 474 U.S. 1057, 106 S.Ct. 798, 88 L.Ed.2d 774 (1986). The necessary proof that the nonmoving party must produce is not precisely

---

1. An issue of material fact is genuine if it has a real basis in the record. *Hartnagel v. Norman,* 953 F.2d 394 (8th Cir.1992) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Beyerbach,* 49 F.3d at 1326; *Hartnagel,* 953 F.2d at 394.

measurable, but the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Allison v. Flexway Trucking, Inc.,* 28 F.3d 64, 66 (8th Cir.1994).

In *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510, *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553, and *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. at 1355–56, the Supreme Court established that a summary judgment motion should be interpreted by the trial court to accomplish its purpose of disposing of factually unsupported claims, and the trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Johnson v. Enron Corp.,* 906 F.2d 1234, 1237 (8th Cir.1990). The trial court, therefore, must "assess the adequacy of the nonmovants' response and whether that showing, on admissible evidence, would be sufficient to carry the burden of proof at trial." *Hartnagel,* 953 F.2d at 396 (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). If the Reutzels fail to make a sufficient showing of an essential element of a claim with respect to which they have the burden of proof, then Spartan Chemical is "entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552; *Woodsmith,* 904 F.2d at 1247. However, if the court can conclude that a reasonable trier of fact could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Burk,* 948 F.2d at 492; *Woodsmith,* 904 F.2d at 1247. With these standards in mind, the court turns to consideration of Defendant Spartan Chemical's Motion for Partial Summary Judgment.

## IV. LEGAL ANALYSIS

### A. The Preemption Doctrine

The preemption doctrine is grounded upon the Supremacy Clause of Article Six of the United States Constitution. U.S. Const. art. VI, cl. 2. The Supremacy Clause invalidates those state laws that "interfere with, or are contrary to" federal law. *Hillsborough County v. Automated Medical Labs., Inc.,* 471 U.S. 707, 712, 105 S.Ct. 2371, 2374, 85 L.Ed.2d 714 (1985) (citing *Gibbons v. Ogden,* 22 U.S. (9 Wheat.) 1, 6 L.Ed. 23 (1824)). The United States Supreme Court explained the different forms of preemption in its opinion in *Louisiana Public Serv. Comm'n v. Federal Communications Comm'n,* 476 U.S. 355, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986):

> The Supremacy Clause of Article VI of the Constitution provides Congress with the power to pre-empt state law. Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, *Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), when there is outright or actual conflict between federal and state law, *e.g. Free v. Bland,* 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), where compliance with both federal and state law is in effect physically impossible, *Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), where there is implicit in federal law a barrier to state regulation, *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947), or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. *Hines v. Davidowitz,* 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1941).

*Id.* at 368–69, 106 S.Ct. at 1898. "The critical question in any pre-emption analysis is always whether Congress intended that federal regulation supersede state law." *Id.* at 369, 106 S.Ct. at 1899. As the Supreme Court noted in *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992):

> Congress' intent may be explicitly stated in the statute's language or implicitly contained in its structure and purpose. In the absence of an express congressional command, state law is pre-empted if that law actually conflicts with federal law, or if

federal law so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it.

*Id.* at 516, 112 S.Ct. at 2617 (internal quotations and citations omitted). In *Cipollone,* the plaintiff, who had developed lung cancer following years of smoking cigarettes, sued cigarette manufacturers under a state common law tort law for failure to warn consumers of the hazards of smoking. *Id.* at 506, 112 S.Ct. at 2613. The defendant cigarette manufacturers asserted that the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. §§ 1331–1340, preempted the plaintiff's state law claims. The cigarette manufacturers grounded their preemption argument on § 1334(b) of the act, which provided that "[n]o requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are labeled in conformity with the provisions of this Act." 15 U.S.C. § 1334(b). The Supreme Court held that "[t]he phrase no 'requirement or prohibition' sweeps broadly and suggests no distinction between positive enactments and common law; to the contrary, those words easily encompass obligations that take the form of common law rules." *Cipollone,* 505 U.S. at 522, 112 S.Ct. at 2620.

### B. The History of FIFRA and Preemption under FIFRA

FIFRA was enacted in 1947 in order replace the government's first effort at pesticide regulation, the Insecticide Act of 1910. *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 601, 111 S.Ct. 2476, 2479, 115 L.Ed.2d 532 (1991). FIFRA, as originally adopted, "was primarily a licensing and labeling statute ..." *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 991, 104 S.Ct. 2862, 2866, 81 L.Ed.2d 815 (1984). It was "designed to work in harmony with the uniform state insecticide, fungicide and rodenticide act which was adopted in many States." S.Rep. No. 92–838, 92d Cong., 2d Sess. (1972), reprinted in 1972 U.S.C.C.A.N. 3993, 3999. In 1972, Congress undertook a comprehensive revision of FIFRA through the Federal Environmental Pesticide Control Act. These amendments significantly strengthened FIFRA's registration and labeling standards and increased the EPA's authority for enforcement. *See Ruckelshaus,* 467 U.S. at 991, 104 S.Ct. at 2866.

FIFRA has an express preemption clause which provides:

(a) In general

A State may regulate the sale or use of any federally registered pesticide or device in the State, but only if and to the extent the regulation does not permit any sale or use prohibited by this subchapter.

(b) Uniformity

Such State shall not impose or continue in effect any requirements for labeling or packaging in addition to or different from those required under this subchapter.

7 U.S.C. § 136v.

■ The legislative history indicates that this provision was intended to place limits on state power: "In dividing the responsibility between the States and Federal Government for the management of an effective pesticide program, the Committee had adopted language which is intended to completely preempt State authority in regard to labeling and packaging." H.R.Rep. 92–511, 92d Cong., 1st Sess. 16 (1971). Thus, it was Congress' intent that subsection (b) preempt "any State labeling or packaging requirements differing from such requirements under the Act." S.Rep. 92–838, 92d Cong., 2d Sess., reprinted in 1972 U.S.C.C.A.N. at 4021.

### C. Prior Case Law on FIFRA Preemption

■ The issue before the court is whether FIFRA preempts state common law actions premised upon a failure to warn or properly label a product required to be registered with the EPA under FIFRA. This issue has been well plowed of late. Following the Supreme Court's decision in *Cipollone,* the United States Courts of Appeals have been in agreement that FIFRA expressly preempts state causes of action that

are based on inadequate labeling.[2] *See Welchert v. American Cyanamid, Inc.*, 59 F.3d 69, 72 (8th Cir.1995) (holding that an express warranty claim based on an EPA approved label is preempted); *Bice v. Leslie's Poolmart*, 39 F.3d 887, 888 (8th Cir.1994) (holding that " 'actual agency approval eliminates any possible claims under state tort law for failure to comply with federal [labeling] requirements.' ") (quoting *National Bank of Commerce v. Kimberly–Clark Corp.*, 38 F.3d 988, 994 n. 4 (8th Cir.1994)); *Taylor AG Indus. v. Pure–Gro*, 54 F.3d 555, 561–63 (9th Cir.1995) (holding that state law claims of implied warranty, negligent testing and failure to warn claims were preempted by FIFRA); *Lowe v. Sporicidin Int'l*, 47 F.3d 124, 129 (4th Cir. 1994) (holding that "an express warranty claim based on EPA approved labeling materials is preempted."); *MacDonald v. Monsanto Co.*, 27 F.3d 1021, 1025 (5th Cir.1994) (holding that FIFRA preempts common law claims); *Worm v. American Cyanamid Co.*, 5 F.3d 744, 747–48 (4th Cir.1993) (holding that FIFRA preempts state common law causes of action); *King v. E.I. Dupont de Nemours and Co.*, 996 F.2d 1346, 1347 (1st Cir.) (holding that FIFRA preempts state common law causes of action), *cert. dismissed*, —— U.S. ——, 114 S.Ct. 490, 126 L.Ed.2d 440 (1993); *Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 371 (7th Cir.1993) (holding that FIFRA preempts state common law causes of action); *Arkansas–Platte & Gulf Partnership v. Van Waters & Rogers, Inc.*, 981 F.2d 1177, 1179 (10th Cir.) (holding that FIFRA preempts state common law causes

of action), *cert. denied*, —— U.S. ——, 114 S.Ct. 60, 126 L.Ed.2d 30 (1993).[3] Likewise, federal district courts have been in near virtual agreement since *Cipollone* was decided that FIFRA expressly preempts state causes of action that require a showing of inadequate labeling.[4] *See Roberson v. E.I. DuPont De Nemours & Co.*, 863 F.Supp. 929, 932 (W.D.Ark.1994); *In re Dupont–Benlate Litigation*, 877 F.Supp. 779, 784 (D.P.R. 1995); *Pitts v. Dow Chem. Co.*, 859 F.Supp. 543, 549 (M.D.Ala.1994); *Bingham v. Terminix Int'l Co., L.P.*, 850 F.Supp. 516, 519–20 (S.D.Miss.1994); *Trinity Mountain Seed Co. v. MSD Agvet*, 844 F.Supp. 597, 601 (D.Idaho 1994); *Levesque v. Miles, Inc.*, 816 F.Supp. 61 (D.N.H.1993).

■ Thus, in light of the conclusions reached by the Eighth Circuit in its recent decision in *Welchert*, and the six other United States Courts of Appeals to examine the issue of FIFRA's preemptive effect since the *Cipollone* decision, the court concludes that FIFRA preempts state common law claims based on inadequate labeling. Therefore, to the extent that the Reuztels' strict liability and negligence claims are based on inadequate labeling or warnings on the Spartan Chemical product SparCling, those claims are preempted.

### D. Claims Preempted by FIFRA

■ Spartan Chemical asserts that FIFRA preempts all of the Reutzels' claims for relief because, although stated as claims for

---

**2.** A fair number of district courts had determined prior to *Cipollone* that FIFRA preempted state common law tort claims based upon a failure to adequately label. *Young v. American Cyanamid Co.*, 786 F.Supp. 781 (E.D.Ark.1991); *Evenson v. Osmose Wood Preserving, Inc.*, 760 F.Supp. 1345 (S.D.Ind.1990); *Hurt v. Dow Chem. Co.*, 759 F.Supp. 556 (E.D.Mo.1990); *Kennan v. Dow Chem. Co.*, 717 F.Supp. 799 (M.D.Fla.1989); *Fisher v. Chevron Chemical Co.*, 716 F.Supp. 1283 (W.D.Mo.1989); *Villari v. Terminix Int'l, Inc.*, 692 F.Supp. 568 (E.D.Pa.1988); *Fitzgerald v. Mallinckrodt, Inc.*, 681 F.Supp. 404 (E.D.Mich. 1987). *But see Thornton v. Fondren Green Apartments*, 788 F.Supp. 928 (S.D.Tex.1992); *Riden v. I.C.I. Americas, Inc.*, 763 F.Supp. 1500 (W.D.Mo. 1991).

**3.** The Reutzels cite the court to the only circuit court decision holding that FIFRA does not

preempt state common law tort claims, the District of Columbia's pre-*Cipollone* decision in *Ferebee v. Chevron Chem. Co.*, 736 F.2d 1529 (D.C.Cir.), *cert. denied*, 469 U.S. 1062, 105 S.Ct. 545, 83 L.Ed.2d 432 (1984). The *Ferebee* decision has been impliedly overruled by the Supreme Court's decision in *Cipollone* and can no longer be viewed as persuasive. *See King*, 996 F.2d at 1351; *Stamps v. Collagen Corp.*, 984 F.2d 1416, 1425 & n. 9 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993).

**4.** Only two post-*Cipollone* district court decisions have held that FIFRA does not preempt state common law claims for relief based on inadequate warning or labeling. *See MacDonald v. Monsanto Co.*, 813 F.Supp. 1258 (E.D.Tex.1993), *rev'd*, 27 F.3d at 1025; *Couture v. Dow Chem. U.S.A.*, 804 F.Supp. 1298 (D.Mont.1992).

strict liability, negligence, and breach of warranty, the claims are actually based on a failure to warn. While failure to warn claims are preempted by FIFRA, state law claims that do not implicate requirements for the labeling or packaging of a product are not preempted. *See Higgins v. Monsanto Co.,* 862 F.Supp. 751, 757–59 (N.D.N.Y.1994) (holding that claims alleging failure to conduct adequate testing, breach of express warranty, and strict liability in tort were not preempted by FIFRA); *Jillson v. Vermont Log Bldgs., Inc.,* 857 F.Supp. 985, 991–92 (D.Mass.1994) (holding that breach of express warranty claim, and negligent design and manufacture claim were not preempted by FIFRA); *Bingham,* 850 F.Supp. at 521–22 (holding that claim that manufacturers were negligent in failing to test and inspect dangerous products was not preempted by FIFRA); *Wright v. Dow Chem. U.S.A.,* 845 F.Supp. 503, 509–11 (M.D.Tenn.1993) (claims for defective design, breach of implied warranty of merchantability, and failure to properly test products were not preempted by FIFRA); *Kennan v. Dow Chem. Co.,* 717 F.Supp. 799, 811–12 (M.D.Fla.1989) (holding that claims based on the defectiveness or unreasonable dangerousness of defendants' product on theories of defective design or manufacturing flaw are not preempted by FIFRA); *Fisher v. Chevron Chemical Co.,* 716 F.Supp. 1283, 1287–89 (W.D.Mo.1989) (holding that FIFRA did not preempt state common-law claims that product was sold in unreasonably dangerous condition). Therefore, the court must determine whether the Reutzels' claims would require different or additional packaging or labeling requirements than the requirements imposed by FIFRA.

### 1. The Reutzels' Claims for Relief under Strict Liability

■ In determining the extent of liability of a product manufacturer for a defective product, Iowa has adopted the strict

products liability doctrine of the Restatement (Second) of Torts § 402A. *Hawkeye–Sec. Ins. Co. v. Ford Motor Co.,* 174 N.W.2d 672, 684 (Iowa 1970); *see Olson v. Prosoco, Inc.,* 522 N.W.2d 284, 289 (Iowa 1994); *Bingham v. Marshall & Huschart Mach. Co.,* 485 N.W.2d 78, 79 (Iowa 1992); *Nelson v. Todd's Ltd.,* 426 N.W.2d 120, 122 (Iowa 1988); *De-Lapp v. Xtraman, Inc.,* 417 N.W.2d 219, 221 (Iowa 1987); *Fuches v. S.E.S. Co.,* 459 N.W.2d 642, 644 (Iowa Ct.App.1990); *see also Spaur v. Owens–Corning Fiberglas Corp.,* 510 N.W.2d 854, 864 (Iowa 1994). Under section 402A of the Restatement, a seller is strictly liable for any product sold "in a defective condition unreasonably dangerous" to the consumer. Under Iowa law, a manufacturer may not be held strictly liable unless a product is both defective and unreasonably dangerous. *See Olson,* 522 N.W.2d at 288; *Fell v. Kewanee Farm Equip. Co., A Div. of Allied Products,* 457 N.W.2d 911, 916 (Iowa 1990); *Smith v. Air Feeds, Inc.,* 519 N.W.2d 827, 830 (Iowa Ct.App.1994); *Fuches,* 459 N.W.2d at 644. A product may be unreasonably dangerous due to a manufacturing defect, or a design defect.[5]

■ In count I, the Reutzels assert that SparCling was defective because it contained hydrocarbons or other toxic chemicals, and inadequate warnings. First, as noted above, *see supra* note 5, Iowa does not recognize a cause of action under strict liability for failure to warn. *See Olson,* 522 N.W.2d at 289. Second, even if Iowa law recognized a claim of strict liability for failure to warn, such a claim is preempted by FIFRA. Thus, the essence of the Reutzels' remaining count I claim is that SparCling contained hydrocarbons or other toxic chemicals. The Reutzels' remaining strict liability claim rests on a theory of defective design and manufacture, not on a theory of failure to warn. Because the Reutzels' remaining claim for strict liability is based on theories of defective design and manufacture and not on a theory of

---

5. Under Iowa law, " '[u]nreasonably dangerous" refers to "the consumer's reasonable expectations regarding the product's characteristics.' " *Wernimont v. International Harvester Corp.,* 309 N.W.2d 137, 140 (Iowa Ct.App.1981) (quoting *Eickelberg v. Deere & Co.,* 276 N.W.2d 442, 444 (Iowa 1979)). In *Olson,* 522 N.W.2d at 289, the

Iowa Supreme Court held that the correct submission of a failure to warn claim is under a theory of negligence and such a claim should not be submitted as a theory of strict liability. Thus, to the extent that the Reutzels have proffered a failure to warn claim under strict liability, that claim is precluded under Iowa law. *Id.*

inadequate labeling, it is not preempted by FIFRA. *See Higgins,* 862 F.Supp. at 759 (holding that claim of strict liability in tort was not preempted by FIFRA); *Wright,* 845 F.Supp. at 510–11 (holding that claim for defective design was not preempted by FI-FRA); *Kennan,* 717 F.Supp. at 811–12 (holding that claims based on the defectiveness or unreasonable dangerousness of product on theories of defective design or manufacturing flaw were not preempted by FIFRA). Therefore, the court will grant in part and deny in part Spartan Chemical's motion as to count I. It is granted as to the Reutzels' claim of strict liability based on an assertion that Spartan Chemical's product SparCling was defective because of a failure to warn. The motion is denied as to the strict liability claim that SparCling was defective because it contained hydrocarbons or other toxic chemicals.

### 2. *The Reutzels' Claims for Relief Alleging Negligence*

Count II of the complaint contains a state law negligence claim. In particular, the Reutzels assert that Spartan Chemical was negligent in failing "to design its products in a safe manner" and in failing to adequately warn of dangers with the use of its product. The Reutzels' assertion that Spartan Chemical was negligent in failing to provide adequate warnings concerning its product is preempted by FIFRA. This leaves open whether the claim for negligent design is also preempted by FIFRA.

Iowa law of products liability law imposes a duty on the manufacturer of a product to act reasonably in the design of that product. *See Hillrichs v. Avco Corp.,* 514 N.W.2d 94, 97 (Iowa 1994). Under such a negligence theory, the reasonableness of the manufacturer's conduct must be determined. *See Henkel v. R & S Bottling Co.,* 323 N.W.2d 185, 189 (Iowa 1982); *Aller v. Rodgers Mach. Mfg. Co.,* 268 N.W.2d 830, 835 (Iowa 1978). Negligence occurs when one party deviates from reasonable standards of care owed to another. *See Ewoldt*

*v. City of Iowa City,* 438 N.W.2d 843, 844 (Iowa Ct.App.1989); *Wilson v. Nepstad,* 282 N.W.2d 664, 667 (Iowa 1979); *see also Kamerick v. Wal–Mart Stores, Inc.,* 503 N.W.2d 24, 26 (Iowa Ct.App.1993). The Reutzels allege negligence based on the defective design of SparCling.[6] Thus, the Reutzels' remaining negligence claim is not based on any requirements for labeling or packaging that are preempted by FIFRA. The Reutzels' negligence claim simply seeks to hold Spartan Chemical to its duty to guard against design defects in its product SparCling and to hold Spartan Chemical liable for damages if injuries are caused by such defects. The court concludes that the Reutzels' remaining negligence claim does concern the labeling or packaging of SparCling, which is governed by FIFRA, and therefore is not preempted by FIFRA. *See Worm,* 5 F.3d at 749; *Higgins,* 862 F.Supp. at 758; *Jillson,* 857 F.Supp. at 991–92.

Therefore, the court will grant in part and deny in part Spartan Chemical's motion as to count II. It is granted as to the Reutzels' claim of negligence based on an assertion that Spartan Chemical was negligent because of a failure to warn. The motion is denied as to the negligence claim that Spartan Chemical was negligent in its design of its product SparCling.

### 3. *The Reutzels' Claims for Breach of Warranty*

Finally, count III of the complaint contains a state law claim for breach of express and implied warranties that SparCling was of merchantable quality, and safe and fit for the purpose for which it was designed. Iowa has codified the implied warranty of merchantability in Iowa Code § 554.2314 and the implied warranty for fitness for a particular purpose in Iowa Code § 554.2315. The record here, however, is devoid of what Spartan Chemical's warranties were with regard to SparCling. Absent such a factual predicate, the court cannot conduct a meaningful analysis of whether these claims are preempted by FIFRA. Therefore, the court

---

**6.** The complaint states that "Spartan was negligent in failing to design its products in a safe

manner."

shall deny this portion of Spartan Chemical's motion.[7]

### E. Estoppel

The Reutzels next assert that Spartan Chemical has withheld information required of it concerning its product SparCling and therefore should be estopped from receiving preemption protection. *See Roberson*, 863 F.Supp. at 932–33 (holding that a defendant "may be estopped from asserting FIFRA pre-emption to the extent that it withheld material facts from the agency, either at the time of registration or thereafter."). First, the court notes that the Eighth Circuit has not approved the application of estoppel in such circumstances, nor has any other circuit. Furthermore, language in the Eighth Circuit's decisions in *Bice* and *Kimberly–Clark* would foreclose such a claim in a FIFRA action. In *Bice*, the court pointed out that " 'actual agency approval *eliminates any possible claims* under state tort law for failure to comply with federal [labeling] requirements.' " *Bice*, 39 F.3d at 888 (quoting *Kimberly–Clark Corp.*, 38 F.3d at 994 n. 4) (emphasis added). In *Pure–Gro*, the Ninth Circuit recently rejected appellants' assertion in that case that analyzing the EPA's administration of its labeling function was a concern for the court:

> Analyzing the performance of an expert regulatory agency such as the EPA, however, is not a function of this court, and furthermore, is irrelevant to the preemption analysis. *See Mattoon v. City of Pittsfield*, 980 F.2d 1, 5 (1st Cir.1992) (separation of powers precludes the courts from second-guessing congressional solutions); *Kennan v. Dow Chem. Co.*, 717 F.Supp. 799, 810 (M.D.Fla.1989) ("Whether that federal regulatory agency carries out its function based on all available and necessary information is ... irrelevant to a preemption inquiry."). We therefore decline the Appellants' invitation: "[I]t is for

the EPA Administrator, not a jury, to determine whether labelling and packaging information is incomplete or inaccurate, and if so what label changes, if any, should be made.... We think FIFRA leaves states with no authority to police manufacturers' compliance with the federal procedures." *Papas II*, 985 F.2d at 519.

*Pure–Gro*, 54 F.3d at 561. In *Papas v. Upjohn Co.*, 926 F.2d 1019 (11th Cir.1991) ("*Papas I*"), *vacated and remanded for reconsideration*, 505 U.S. 1215, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992), *reinstated and aff'd*, 985 F.2d 516 (11th Cir.) ("*Papas I*"), *cert. denied*, —— U.S. ——, 114 S.Ct. 300, 126 L.Ed.2d 248 (1993), the Eleventh Circuit concluded that claims that a defendant manufacturer provided misinformation to an agency would not block preemption. The court found that tort claims concerning pesticides were preempted by FIFRA, even though plaintiff alleged that the agency involved had not received adequate information from the manufacturer. The Eleventh Circuit clearly stated that express preemption of state law claims "leaves states with no authority to police manufacturers' compliance with federal procedures." *Papas II*, 985 F.2d at 519.

A final consideration on this issue is the inapplicability of the sole case relied on by the court in *Roberson* for its proposition that failure to comply with agency requirements can estop preemption. *See Hurley v. Lederle Lab. Div. of Am. Cyanamid, Co.*, 863 F.2d 1173 (5th Cir.1988). In *Hurley*, the court held that factual issues remained concerning whether the FDA had received enough information from the manufacturer of vaccines concerning warning labels. *Id.* at 1179–80. The court said that the jury should decide whether the FDA was given the correct data, and if it was not, whether its warnings would have been altered as a result. *Id.* The court finds, however, that the reasoning in *Hurley* is inapplicable to this

---

7. The court does note, however, that the Eighth Circuit held in *Welchert*, 59 F.3d at 73, that an express warranty claim based on EPA approved labeling materials is preempted by FIFRA. *Id.; see also Lowe*, 47 F.3d at 129 ("an express warranty claim based on EPA approved labeling materials is preempted."); *Worm*, 5 F.3d at 749 ("[b]ecause the [plaintiffs] point[ed] to no state-

ment made by [defendant manufacturer] other than that required and approved by the EPA, their warranty claims [we]re preempted."). Here, whether the Reutzels' express and implied warranty claims are based on a labeling statement specifically required by federal law under FIFRA and approved by the EPA, cannot be determined from the record before the court.

case. First, *Hurley* involved a vaccine regulated under the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301 *et seq.,* and the Public Health Service Act, 42 U.S.C. § 247b and 262, not a product regulated under FIFRA. Furthermore, and more importantly, express preemption did not apply to that plaintiff's state claims as it does in this case. *Id.* at 1176. Finally, the court disagrees with the conclusion in *Hurley* that a jury should decide whether a defendant complied with FDA regulations. The reasoning in *Pure–Gro* and *Papas II* is more persuasive. *See Pure–Gro,* 54 F.3d at 561; *Papas II,* 985 F.2d at 519. The court concludes that by enacting FIFRA, Congress determined that the FDA, and not the judiciary, has the task of insuring that insecticides, fungicides, and rodentcides are in compliance with the requirements of the FIFRA. Were the court to decide that an allegation of failure to comply with agency requirements would save all state tort claims against insecticides, fungicides, and rodentcides, then the provisions of FIFRA and Congressional intent would be rendered a nullity. Such a conclusion would circumvent the preemptive effect of section 136v, and Congress' intent to protect manufacturers of such materials would be severely undermined. Therefore, the court concludes that the doctrine of estoppel does not prevent Spartan Chemical from asserting FIFRA preemption.

Alternatively, even if the court was to follow the lead of *Roberson* and conclude that estoppel was a possible defense, unlike the plaintiffs in *Roberson,* the Reutzels have not "placed materials before the court tending to show that [the defendant] did not place before the EPA all the relevant available information on [the product], but instead *intentionally concealed material facts." Id.* at 932 (emphasis added); *see also Hurley,* 863 F.2d at 1179 (requiring determination that "possession of [intentionally withheld] information would have *materially altered* the content of the FDA's warning."). Here there is no evidence of any intentional concealment of a material fact. Rather, the only evidence presented by the Reutzels here is the fact that in 1986 Spartan Chemical switched to Alpine's Mint Fragrance # 139–983 as the exclusive fragrance for SparCling, and that

Spartan Chemical itself has not performed any toxicity testing on Alpine's Mint # 139–983. These two facts, either by themselves or in combination, do not generate a material fact question on the issue of whether Spartan Chemical withheld material facts from the EPA concerning SparCling. Clearly, the material produced demonstrates that the chemical makeup of SparCling changed. Thus, Spartan Chemical was required to file an application for amended registration before it could legally sell or distribute SparCling. *See* 40 C.F.R. § 152.44(a) (requiring "any modification in the composition, labeling or packaging of a registered product must be submitted with an application for amended registration."). However, the change in SparCling was not of any active ingredient but rather an inert ingredient making up ⅒ of 1 percent of the solution, the fragrance of SparCling. The non-materiality of this change is demonstrated by the fact that the label for SparCling required under FIFRA does not require any mention of such an inert ingredient. Thus, the Reutzels have not produced any evidence that this change was a material fact which was intentionally withheld from the EPA. Therefore, having concluded that the Reutzels have failed to generate a material question of fact question on the issue of whether Spartan Chemical intentionally withheld material facts from the EPA concerning SparCling, application of the doctrine of estoppel in inapplicable here.

## V. CONCLUSION

The court grants in part and denies in part Defendant Spartan Chemical's Motion for Partial Summary Judgment. The court concludes that FIFRA preempts state common law actions premised upon a failure to warn or properly label a product required to be registered with the EPA under FIFRA. Therefore, those portions of the Reuztels' strict liability and negligence claims, found in count I and count II of the complaint respectively, based on inadequate labeling or warnings on the Spartan Chemical product SparCling are preempted by FIFRA. Spartan Chemical's motion is granted as to those portions of count I and count II. The Reutzels' remaining strict liability claim rests on a

theory of defective design and manufacture, not on a theory of failure to warn. Thus, it is not preempted by FIFRA. Therefore, the court will deny in part of Spartan Chemical's motion as to the strict liability claim that SparCling was defective because it contained hydrocarbons or other toxic chemicals. Similarly, the Reutzels' remaining negligence claim is based on the defective design of SparCling. Because, the Reutzels' remaining negligence claim is not based on any requirements for labeling or packaging, it is not preempted by FIFRA. The court, therefore, will deny that part Spartan Chemical's motion as to the negligence claim that Spartan Chemical was negligent in its design of its product SparCling. The court will deny Spartan Chemical's motion as to count III because the record does not show what, if anything, Spartan Chemical warranties with regard to SparCling, and absent such a factual predicate the court cannot conduct a meaningful analysis of whether these claims are preempted by FIFRA. Furthermore, the court concludes that by enacting FIFRA, Congress determined that the FDA, and not the judiciary, has the task of ensuring that insecticides, fungicides, and rodenticides are in compliance with the requirements of the FIFRA. Therefore, the court concludes that the doctrine of estoppel does not prevent Spartan Chemical from asserting FIFRA preemption in this case. Alternatively, the court finds that the Reutzels have not produced any evidence that a change in SparCling's fragrance was a material fact which was intentionally withheld from the EPA. Therefore, having concluded that the Reutzels have failed to generate a material question of fact question on the issue of whether Spartan Chemical intentionally withheld material facts from the EPA concerning SparCling, application of the doctrine of estoppel is inapplicable here.

**IT IS SO ORDERED.**