272 F.Supp.2d 1112 (2003)
Linda AKEE et al., Plaintiffs,
v.
THE DOW CHEMICAL COMPANY, et al., Defendants.
No. 00-CV-382BMK.
United States District Court, D. Hawai`i.
July 21, 2003.
*1113 *1114 *1115 *1116 *1117 Raymond J. Tam, Tam & Stanford, Honolulu, HI, Edward L. Masry, Masry & Vititoe, Westlake Village, CA, Walter J. Lack, Ann A. Howitt, Engstrom Lipscomb & Lack, Los Angels, CA, Thomas V. Girardi, David N. Bigelow, Carrie J. Rognlien, Girardi & Keese, Los Angeles, CA, for Linda Akee, Camilo Abalos, Obdulia Abalos, Juliette Akana, Kurumi Kaapana-Aki, Timothy Aki, Chelal Aki, deceased rec Timothy Aki, Timothy Aki gal Uv Aki, Uv Aki, a minor, Bruce M. Beaver, Cheryl Bentosino, Shaylie Bentosino, a minor gal Cheryl Bentosino, Dennis Bentosino, Dathanille Bicoy, Joshua Bicoy, Deceased rec Dathanille Bicoy, Charmaine Bissen, Kenneth Bisen, III, a minor gal Charmaine Bissen, Ernest Cabinte, Patricia Cabinte, Anatalio Cabrido, Donna Cadiente, Andrea Cadiente, a minor gal Donna Cadiente, Tanya Cadiente, a minor gal Donna Cadiente, Stanley Cadiente, Slade Carpenter, a minor gal Lisa Carpenter, Kenwyn Castellano, an Individual and as Guardian Ad Litem for minor child Jermayne Hightower, minor child, Nicole Castellano, and minor child Kealii Castellano, Russell  Castellano, Jermayne Hightower, a minor gal Kenwyn Castellano, Nicole Castellano, a minor gal Kenwyn Castellano, Kealii Castellano, a minor gal Kenwyn Castellano, Gary Ann Cordeiro, an Elijah Iona Cordeiro, deceased rec Gary Ann Cordeiro, Jonah Cordeiro, Earl Danielson, Zelinda Danielson, an Individual and as Guardian Ad Litem for minor child Lyle Santiago, Lyle Santiago, a minor gal Zelinda Danielson gal Zelinda Danielson, Violet Duff, Anna Dunn, Robert  Dunn, Linda Dusil-Lucero, Yvonne Enos, Rose Fagaragan, Brandon Fagaragan, a minor gal Rose Fagaragan, Adrienne Felmet, Hina Felmet, a minor gal Adrienne Felmet, Gary Felmet, Agnes Francisco, Renee Francisco, a minor gal Agnes Francisco, Rose Frando, Thomas Frando, Gregory  Franklin, an Individual and as Guardian Ad Litem for Ryan Franklin, a minor, and as Special Administrator for Christine Franklin, Ryan Franklin, a minor gal Gregory  Franklin, Christine Franklin rec Gregory  Franklin, Charles Freitas, Kevin Fujiwara, Roxane Fujiwara, Milton Gabriel, Shirly Gabriel, an Individual and as Guardian Ad Litem for minor child Heavenly Gabriel, minor child Nakoa Gabriel, minor child Joshua Pulawa, and minor child Preston Pulawa, Heavenly Gabriel, a minor gal Shirly Gabriel, Nakoa Gabriel, a minor gal Shirly Gabriel, Joshua Pulawa, a minor gal Shirly Gabriel, Preston Pulawa, a minor gal Shirly Gabriel, Floretta Galera, an Individual, Ponciano Galera, III, an Individual and as Guardian Ad Litem for minor child Salena Galera, and minor child Sienna Galera, Salena Galera, a minor gal Ponciano Galera, III, Susan Gillespie, an Individual and as Guardian Ad Litem for minor child Ian Gillespie, Ian Gillespie, a minor gal Susan Gillespie, Jake Glendon, a minor gal Christie Glendon, Kyle Glendon, a minor gal Christie Glendon, Michelle L. Gonzalez, an Individual, Nicole Guerrero, an Individual, Pepito Guevarra, an Individual and as Guardian Ad Litem for minor child Heather Guevarra, Estrella Guevarra, an Individual, Heather Guevarra, a minor gal Pepito Guevarra, Kathy Higa, an Individual and as Guardian Ad Litem for minor child Wayland Higa, Ralph Higa, an Individual, Deborah Higashi, an Individual and as Guardian Ad Litem for minor child Janelle Higashi, Janelle Higashi, a minor gal, Deborah Higashi, Steven Higashi, an Individual, Jared H. Higashi, an Individual, Norma Hirokawa, an Individual, Lois Ifft, an Individual, and as Special Administrator for minor child Faith Hiruko, and as Guardian Ad Litem for minor child Jessica Hiruko, and minor child Rebecca Hiruko, Jessica Hiruko, a minor gal Lois Ifft, Rebecca Hiruko, a minor *1118 gal Lois Ifft, Lindsay Ho, an Individual, Litia Ho, an Individual and as Guardian Ad Litem for minor child Mandie Ho, minor child Matthew Ho, minor child Melissa Ho, and as Special Administrator of Michael Ho, deceased, Mandie Ho, a minor gal Litia Ho, Matthew Ho, a minor gal Litia Ho, Melissa Ho, a minor gal Litia Ho, Michael Ho, deceased rec Litia Ho, Ikue Hyrne, an Individual, Janet Hyrne, an Individual, John Hyrne, III, an Individual, John Hyrne, Jr., an Individual, Leslie Inouye, an Individual, Gayle Inouye, an Individual and as Guardian Ad Litem for minor child Cody Inouye, Cody Inouye, a minor gal Gayle Inouye, Kenichi Kamimura, an Individual and as Special Administrator for Joyce Kamimura, Joyce Kamimura rec Kenichi Kamimura, Deborah Kaui, an Individual and as Guardian Ad Litem for minor child Shaine Kaui, Shaine Kaui, a minor gal Deborah Kaui, Ralph Kaui, an Individual, Robert Kent, Sr., an Individual and as Special Administrator for Bobbie Kim Kent, deceased, Bobbie Kim Kent, deceased rec Robert Kent, Sr., Myra Kim, an Individual and as Guardian Ad Litem for minor child Robert Kim, Jr., Robert Kim, Jr., a minor gal Myra Kim, Aurenne B. Lanting, an Individual and as Guardian Ad Litem for minor child Alyssa M. Lanting, Alyssa M. Lanting, a minor gal Aurenne B. Lanting, Cynthia Lanting, an Individual and as Guardian Ad Litem for minor child Quinn Lanting, Quinn Lanting, a minor gal Cynthia Lanting, Leslie Lavarias, an Individual, Letioa Leota, an Individual, Lupe Leota, an Individual and as Guardian Ad Litem for minor child Iesha-Vera Leota, Iesha-Vera Leota, a minor gal Lupe Leota, Clifford Marcello, an Individual, Donna Marcello, an Individual and as Guardian Ad Litem for minor child Krislynn Marcello, Krislynn Marcello, a minor gal Donna Marcello, Lynn Marquez, an Individual and as Special Administrator for Angel Lynn Tolbe, deceased, Angel Lynn Tolbe, deceased rec Lynn Marquez, Janis McCain, an Individual, Joseph Miarecki, an Individual, Lynn Nakahara, an Individual and as Guardian Ad Litem for minor child Travis Yamaguchi, Travis Yamaguchi, a minor gal Lynn Nakahara, Gerald Nakata, an Individual, Linda Nakata, an Individual and as Guardian Ad Litem for minor child Brandon Nakata, Brandon Nakata, a minor gal Linda Nakata, Brian Navarrete, an Individual, Inocencio Navarrete, an Individual and as Special Administrator for Felisa Navarrete, deceased, Felisa Navarrete, deceased rec Inocencio Navarrete, Josefina Navarrete, an Individual and as Guardian Ad Litem for minor child Shawn Navarrete, and minor child Kenneth Navarrete, Shawn Navarrete, a minor gal Josefina Navarrete, Kenneth Navarrete, a minor gal Josefina Navarrete, Jeanette Nekota, an Individual and as Guardian Ad Litem for minor child Rhea Nekota, Rhea Nekota, a minor gal Jeanette Nekota, Caroline Nieto, Bernard Obungen, Susane Obungen, Gail Okouchi, an Individual and as Special Administrator for Jennifer Okouchi, deceased, Jennifer Okouchi, deceased rec Gail Okouchi, Herbert Okouchi, an Individual, Craig Pang, Jamie Pang, an Individual and as Guardian Ad Litem for minor child Bryant Pang, Bryant Pang, a minor gal Jamie Pang, Kyoko Patoc, an Individual and as Guardian Ad Litem for minor child Brandon Patoc, and minor child Travis Patoc, Brandon Patoc, a minor gal Kyoko Patoc, Travis Patoc, a minor gal Kyoko Patoc, Carol Payne, Cary Perez, an Individual and as Guardian Ad Litem for minor child Jovhan Perez, Jovhan Perez, a minor gal Cary Perez, Emily Peria, Gerry Peria, Lotolelei Purcell, Tenitala Purcell, Azucena Ramirez, Phillip Rios, an Individual and as Guardian Ad Litem for minor child Colton Rios, Colton Rios, *1119 a minor gal Phillip Rios, Allaine Rivera, an individual and as Guardian Ad Litem for minor child Ferdinand Rivera, Jr., Ferdinand Rivera, Jr., a minor gal Allaine Rivera, Ferdinand Rivera, Rickey  Rivera, Allen Saraos, Rosemary Saraos, Stephanie Schoening, Janet Kim Seu, Emily Skedeleski, an Individual and as Guardian Ad Litem for minor child Jace Skedeleski, and minor child Jenna Skedeleski, Jace Skedeleski, a minor gal Emily Skedeleski, Jenna Skedeleski, a minor gal Emily Skedeleski, Glenn Skedeleski, Douglas Slattery, Brandi Solmerin, a minor gal Lisa Solmerin, Flor Soriano, an Individual and as Guardian Ad Litem for minor child Jonathan Soriano, minor child Jose Soriano, and minor child Joseph Soriano, Jose Soriano, a minor gal Flor Soriano, Jose Soriano, Andrea Stevers, an Individual and as Guardian Ad Litem for minor child Brittany Stevers, and minor child Nicholas Stevers, Brittany Stevers, a minor gal Andrea Stevers, Nicholas Stevers, a minor gal Andrea Stevers, Michael Stevers, Garrett Suga, Ginger Suga, an Individual and as Special Administrator for Megan Suga, deceased, Megan Suga, deceased rec Ginger Suga, Guy Tamashiro, Leslie Tamashiro, an Individual and as Guardian Ad Litem for minor child Annalyse Tamashiro, and minor child Sydney Tamashiro, Annalyse Tamashiro, a minor gal Leslie Tamashiro, Sydney Tamashiro, a minor gal Leslie Tamashiro, Waynette Tamashiro, an Individual and as Guardian Ad Litem for minor child Tyler Tamashiro, Tyler Tamashiro, a minor gal Waynette Tamashiro, Timothy Tanabe, an Individual, Danny Tegui, an Individual and as Special Administrator for Amor Tegui, deceased, Amor Tegui, deceased rec Danny Tegui, Otis Thomas, Donna Thomson, Roland Thompson, Nunziata Tilley, Sharilyn Ventura, Earl Watanabe, Laura Watanabe, an Individual and as Guardian Ad Litem for minor child Shane Watanabe, Shane Watanabe, a minor gal Laura Watanabe, Christina Wheaton, an Individual and as Guardian Ad Litem for minor child Emily Wheaton, minor child Amanda Wheaton, and minor child Jessica Wheaton, Emily Wheaton, a minor gal Christina Wheaton, Amanda Wheaton, a minor gal Christina Wheaton, Felicisma Wild, Janice Yamakawa, an Individual and as Guardian Ad Litem for minor child Allyson Yamakawa, and as Special Administrator for Ryan Yamakawa, deceased, Allyson Yamakawa, a minor gal Janice Yamakawa, Ryan Yamakawa, deceased rec Janice Yamakawa, Rodney Yamakawa, Kyong Ae Yi, Leilani Yim, an Individual and as Guardian Ad Litem for minor child Kaniela Yim, and minor child Ponciano Yim, Kaniela Yim, a minor gal Leilani Yim, Ponciano Yim, a minor gal Leilani Yim, Janne Yoshinaga, an Individual and as Guardian Ad Litem for minor child Jared Yoshinaga, and minor child Micah Yoshinaga, Jared Yoshinaga, a minor gal Janne Yoshinaga, Micah Yoshinaga, a minor gal Janne Yoshinaga, Lawrence Yoshinaga, Bert Arimoto, Pamela Arimoto, Individual, David Asakura, Darren Bajo, Kenneth Bissen, Jr., Cameron Blackwell, Minor, Christopher Blackwell, Minor, Jeffrey Blackwell, Lorraine Blackwell, Individual and as Guardian Ad Litem for Cameron and Christopher Blackwell, minors. As Special Administrator for Hedwig Keopuhiwa, deceased, Elsa Bonsato, Individual, Cheryl Buckman, Individual and as Guardian Ad Litem for Timothy Purifoy, minor, Profetiza Cabrido, Marie Cera, Petronila Cera, Individual and as Special Administrator for Vivencio Cero, decease, Vivencio Cera, deceased, Marie Ferreira, Michael Ferreira, Mary Fitt, Roxane Gibo, Juan Gonzalez, Dolores Harris, Rhonda Harris, Ronald Harris, Steven Harris, Jeanne Heu, Individual, Wesley Heu, Raymond Higa, Susan *1120 Higa, Individual, Nestor Hipolito, Rose Hipolito, Jennifer Hirokawa, Minor, Norma Hirokawa as Guardian Ad Litem for Jennifer Hirokawa, Joshua, Malia, and Melissa Hirokawa-Thomas, minors, Joshua Hirokawa-Thomas, Minor, Malia Hirokawa-Thomas, Minor, Melissa Hirokawa-Thomas, Minor, Carol Hyrne, Individual, Derek Kajihiro, Janet Kajihiro, Aileen Kajiwara, Jupiter Kajiwara, as Special Administrator for Samuel and Yohko Kajiwara, deceased, Samuel Kajiwara, Deceased, Yohko Kajiwara, Deceased, Ken Jr. Kamimura, Hedwig Keopuhiwa, Deceased, Larry Koval, Linda Koval, Christine Madeira, Robert Makizuru, Yoko Makizuru, Arnold McWhorter, Shirly McWhorter, Danette Meheula-Tenn, Wealth Miarecki, Baldwin Miyake, Sally Miyaka, James Morse, Kalae Morse, Lynne Morse, Derrick Nekota, Cherie Opendo, as Special Administrator for Albert Samson, deceased, Lynne Ono, Scott Ono, Terrilynn Ono, Diana Oshiro, Individual rec Dureka Oshiro, Dureka Oshiro, Deceased, Michael Oshiro, Erik Pang, Minor gal Craig Pang, Patrick Pasco, Francisco Patoc, Ikua Purdy, Margaret Purdy, Timothy Purifoy, Minor, Paul Rodrigues, Albert Samson, Deceased, Jere Lee Sanchez, Individually and as Guardian Ad Litem for Kenton, Megan, and Sasha Sanchez, minors, Kenton Sanchez, minor rec Jere Lee Sanchez, Megan Sanchez, minor rec Jere Lee Sanchez, Sasha Sanchez, minor rec Jere Lee Sanchez, Kent Sanchez, Aaron Sayers, Barbara Sayers, Frank Sayers, Morris Shiratori, Susan Shiratori, Kimberly Silva, William Silva, Jr., Joan Souki, Vincent Souki, Dean Sueda, Wanda Sueda, Alena Suemori, Natalie Suemori, Romeo Sumaylo, Ellen Suzuki, Ian Tamashiro, Kathleen Tice, Lawrence Tice, Earl Tilley, Ellen Tomisato, Henry Tomisato, Deceased rec Ellen Tomisato, Gary Tomisato, Deceased, Henry Tomisato, Deceased, Leone Tomisato, as Special Administrator for Gary Tomisato, deceased, Clint Walker, Kenneth Walker, David West, Michael O. West, Minor, Patti West, Individually and as Guardian Ad Litem for Michael West, minor, Jessica Wheaton, a minor gal Christina Wheaton, Anna Yin, John Yin, plaintiffs.
Raymond J. Tam, Glenn J. Stanford, Tam & Stanford, Honolulu, HI, Edward L. Masry, David E. Weeks, Masry & Vititoe, Westlake Village, CA, Walter J. Lack, Ann A. Howitt, Brian J. Leinbach, Gary A. Praglin, Engstrom Lipscomb & Lack, Los Angeles, CA, Thomas V. Girardi, Girardi & Keese, Los Angels, CA, for Christophr Koval, plaintiff.
Sidney K. Ayabe, Jeffrey H.K. Sia, Calvin E. Young, Steven L. Goto, Ayabe Chong Nishimoto Sia & Nakamura, Honolulu, HI, Gennaro A. Filice, III, Nicholas D. Kayhan, Oakland, CA, Dean T. Barnhard, Barnes & Thornburg, Indianapolis, IN, for Dow Chemical Co., defendant.
Dale W. Lee, Thomas H.Y.P. Yee, Kobayashi Sugita & Goda, Honolulu, HI, Stephen W. Jones, Sedgwick Detert Moran & Arnold, San Francisco, CA, Burt Ballanfant, Shell Oil Company, Houston, TX, for John R. Myrdal, Scott I. Batterman, Tred R. Everly, Stanton Clay Chapman Crumpton & Iwamura, Elise Owens Thorn, Edmunds Maki Verga & Thorn, Honolulu, Daniel A. Casey, Kirkpatrick & Lockhart LLP, Miami, FL, John T. Komeiji, Watanabe Ing Kawashima & Komeiji LLP, Honolulu, James S. Teater, Jones Day Reavis & Pogue, Dallas, TX, Robert T. Takamatsu, Patsy H. Kirio, Watanabe Ing Kawashima & Komeiji LLP, Honolulu, Nancy Mackimm, Jones Day Reavis & Pogue, Dallas, TX, Dennis Niles, Judy A. Tanaka, Pamela W. Bunn, Paul Johnson Park & Niles, Honolulu, Todd D. Thibodo, Paul Hastings Janofsky & Walker, Los Angeles, CA, Christopher W. Tompkins, Betts Patterson & Mines P S, Seattle, WA, Thomas *1121 E. Cook, Edquon Lee, Lyons Brandt Cook & Hiramatsu, Michael R. Cruise, Paul Johnson Park & Niles, Honolulu, Judy A. Tanaka, Paul Johnson Park & Niles, Wailuku, Amanda E. Vedrich, Betts Patterson & Mines P S, Seattle, WA, for Shell Oil Co., Shell Petroleum Inc., Shell Chemical Company, Shell Chemicals, Ltd.
John R. Mrydal, Scott I. Batterman, Stanton Clay Chapman Crumpton & IWamura, for Del Monte Corporation, defendant.
John T. Komeiji, Watanbe Ing Kawashima & Komeiji LLP, Honolulu, HI, Elise Owens Thorn, James S. Teater, Jones Day Reavis & Pogue, Dallas, TX, Daniel A. Casey, Kirkpatrick & Lockhart LLP, Miami, FL, for Del Monte Fresh Produce (Hawaii) Inc., defendant.
John T. Komeiji, Robert T. Takamatsu, Patsy H. Kirio, Watanbe Ing Kawashima & Komeiji LLP, Honolulu, HI, James S. Teater, Nancy Mackim, Jones Day Reavis & Pogue, Dallas, TX, for Dole Foods Corp., defendant.
Dennis Niles, Judy A. Tanaka, Pamela W. Bunn, Paul Johnson Park & Niles, Honolulu, HI, for Libby McNeill Libby, Inc., defendant.
Christopher W. Tompkins, Betts Patterson & Mines P.S., Seattle, WA, Thomas E. Cook, Edquon Lee, Lyons Brandt Cook & Hiramatsu, Honolulu, HI, for Great Lakes Chemical Corp., Nestle USA, Inc., defendants.
Theodore G. Meeker, Office of U.S. Atty., Honolulu, HI, Robert D. McCallum, Jr., U.S. Dept. of Justice Civ. Div. Torts Branch, Washington, DC, for U.S., defendant.

ORDER GRANTING SHELL'S MOTIONS FOR SUMMARY JUDGMENT, AND GRANTING IN PART, AND DENYING IN PART, DOW'S MOTION FOR SUMMARY JUDGMENT, AND GRANTING DOLE'S MOTION FOR SUMMARY JUDGMENT ON COUNT IV
KURREN, United States Magistrate Judge.
Before the Court, pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, is Shell Oil Company's, Shell Petroleum Inc.'s, Shell Chemical Company's, and Shell Chemicals, Ltd.'s ("Shell" or the "Shell Defendants") and The Dow Chemical Company's ("Dow") Motions for Summary Judgment on the remaining claims of Plaintiffs' Third Amended Complaint. In addition, before the Court, pursuant to Rules 12(c) and 56(c) of the Federal Rules of Civil Procedure, is Dole Food Company's ("Dole") Motion to Dismiss Count IV of the Third Amended Complaint on the Pleadings, or, in the alternative, Motion for Summary Judgment.[1] All of the motions came on for hearing on June 27, 2003. After careful consideration of the parties submissions and arguments, the Court grants Shell's motions for summary judgment on the remaining claims in Plaintiffs' Third Amended Complaint. Further, the Court grants in part, and denies in part, Dow's motion for summary judgment. Finally, the Court grants Dole's motion for summary judgment on Count *1122 IV of Plaintiffs' Third Amended Complaint.[2]

BACKGROUND
According to Plaintiffs, as early as 1955, Shell manufactured and sold D-D and DBCP which are nematocides or pesticides ("the Shell products") to Dole, Del Monte and Libby.[3] (Pl. Resp. Stmt. in Opp. to Shell's Motion for Summary Judgment on D-D at 4, ¶ 8; Pl. Stmt. in Opp. to Shell's Motion for Summary Judgment on DBCP at 2, ¶ 1.) Similarly, Plaintiffs contend, some time prior to 1964, Dow manufactured and sold DBCP based pesticides to Dole, Del Monte and Libby. (Pl. Resp. Stmt. in Opp. to Dow's Motion for Summary Judgement at 5, ¶ 7.)[4] Dole, Del Monte and Libby used the Shell and Dow products on their Central Oahu pineapple crops to control nematodes and rootworms. (Pl. Third Am. Compl. ¶ 12; Pl. Resp. Stmt. in Opp. to Dole's Motions, Declaration of Glenn J. Stanford ("Stanford Decl."), ¶ 3.)[5] According to Plaintiffs, after Dole, Del Monte and Libby applied the Shell and Dow products to their pineapple crops, the products contaminated the air, soil, and water in Central Oahu. (Pl. Third Am. Compl. ¶ 15.) Consequently, Plaintiffs allege, they were exposed to EDB, D-D, and DBCP which has caused them to suffer various illnesses and/or injuries. (Pl. Third Am. Compl. at ¶¶ 15-16.)
Plaintiffs' Third Amended Complaint alleges nine causes of action against each of the Defendants: (I) negligence; (II) breach of express and implied warranties; (III) strict liability; (IV) failure to warn; (V) ultra-hazardous activities; (VI) negligent infliction of emotional distress; (VII) negligence per se; (VIII) unfair or deceptive practices; and (IX) wrongful death. In an order dated December 17, 2002, this Court dismissed Count VII (negligence per se) and Count VIII (unfair or deceptive practices) as against all of the Defendants. In addition, in a separate order dated December 17, 2002, this Court dismissed Count V (ultrahazardous activities) as against Dow, the Shell Defendants, and Great Lakes. Finally, in an order dated May 23, 2003, this Court dismissed Counts II (breach of warranty) and III (strict liability) as against Dole, the Del Monte Defendants, and Libby.

DISCUSSION
Shell and Dow argue that the remaining claims in Plaintiffs' Third Amended Complaint are preempted by the Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136 et seq., because each claim is premised on allegedly inadequate warnings or insufficient product labeling or packaging. Moreover, Shell and Dow argue, to the extent that *1123 Plaintiffs assert claims based on an alleged concealment of information from the EPA, or violations of FIFRA's provisions, such claims are also preempted. Further, Dow argues that because the warnings on the Dow products are sufficient or adequate as a matter of law, liability under each of Plaintiffs' claims is negated. Finally, Dow asserts that because Counts VI and IX are derivative in nature, and Plaintiffs' substantive causes of action are preempted by FIFRA, these counts must be dismissed.
Plaintiffs oppose Shell's and Dow's motions for summary judgment arguing that the remaining claims in the Third Amended Complaint are not preempted by FIFRA, because Shell's and Dow's products' labels "do not play a part in this case." In addition, Plaintiffs argue, to the extent their remaining claims arise from exposure to Shell's and Dow's products resulting from a sale or use prior to October of 1972, the claims are not preempted by FIFRA. Further, Plaintiffs assert, Shell and Dow are estopped from relying on FIFRA preemption as a defense to Plaintiffs' state law claims, because both entities deliberately concealed information about their respective products. Finally, Plaintiffs contend, summary judgment for either Shell or Dow is inappropriate, because it will result in "piecemeal" disposition of Plaintiffs' claims.
In Dole's motion, Dole argues that it is entitled to dismissal of Count IV (failure to warn), because it is not a manufacturer or seller of any of the pesticide products at issue in this lawsuit, and hence, it had no duty to warn Plaintiffs. Alternatively, Dole argues, it is entitled to summary judgment on Count IV because: (1) it had no duty to warn Plaintiffs since any warnings would have been futile; and/or (2) FIFRA preempts the failure to warn claim. Plaintiffs respond arguing that Count IV should not be dismissed as against Dole, because Dole is "sued as a landowner, not a manufacturer." Moreover, Plaintiffs argue, Count IV is not preempted by FIFRA, because Dole is not a pesticide registrant under FIFRA. Finally, Plaintiffs argue, to the extent Plaintiffs' failure to warn claims against Dole arise from Dole's pesticide use prior to 1972, the claims are not preempted, because FIFRA did not include a preemption provision before that date.

A. Summary Judgment Standard

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact and that the undisputed facts warrant judgment for the moving party as a matter of law. Fed.R.Civ.P. 56(c). In assessing whether a genuine issue of material fact exists, courts must resolve all ambiguities and draw all factual inferences in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see also Cline v. Industrial Maint. Eng'g & Contracting Co., 200 F.3d 1223 (9th Cir.2000). In deciding a motion for summary judgment, the court's function is not to try issues of fact, rather, it is only to determine whether there are issues to be tried. Anderson, 477 U.S. at 249, 106 S.Ct. 2505.
The party opposing a motion for summary judgment cannot stand on mere allegations in its pleadings, or simply assert that it will be able to discredit the moving party's evidence at trial. Fed.R.Civ.P. 56(e); see also T.W. Elec. Serv. Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.1987). In other words, the opposing party must do more than show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); see also Scribner v. Worldcom, Inc., 249 F.3d 902, 907 (9th Cir.2001) (mere scintilla of evidence or metaphysical *1124 doubt as to material facts does not suffice to defeat summary judgment). Thus, to avoid summary judgment, the non-moving party must come forward with specific facts and significant probative evidence demonstrating the existence of a genuine issue of fact for trial. Matsushita, 475 U.S. at 587, 106 S.Ct. 1348; see also Rivera v. National R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir.2003) (conclusory allegations unsupported by factual data cannot defeat summary judgment).

B. FIFRA

In 1947, Congress enacted FIFRA as a pesticide licensing and labeling statute to replace the Insecticide Act of 1910. See Wisconsin Public Intervenor v. Mortier, 501 U.S. 597, 601, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). Under the 1947 version of FIFRA, the United States Department of Agriculture ("USDA") was given the authority to regulate, register and label pesticides. Arkansas-Platte & Gulf P'ship v. Van Waters & Rogers, Inc., 959 F.2d 158, 159 (10th Cir.), vacated by, 506 U.S. 910, 113 S.Ct. 314, 121 L.Ed.2d 235 (1992), adhered to by, 981 F.2d 1177 (10th Cir.1993). In 1970, enforcement authority for FIFRA's provisions was transferred to the Environmental Protection Agency ("EPA"). See Mortier, 501 U.S. at 601, 111 S.Ct. 2476. In 1972, Congress amended FIFRA, and although the pre-1972 version is similar to the amended version, it is not identical. Arkansas-Platte, 959 F.2d at 160.
Following the 1972 amendments, FIFRA became a comprehensive statute regulating the use, sale and labeling of pesticides. See, e.g., Taylor AG Indus. v. Pure-Gro, 54 F.3d 555, 559 (9th Cir.1995); see also Arkansas-Platte, 959 F.2d at 160 (explaining that the 1972 amendments significantly strengthened FIFRA's registration and labeling standards resulting in a comprehensive regulatory scheme). Among other things, FIFRA requires manufacturers to register a pesticide before introducing it into the market. Nathan Kimmel, Inc. v. DowElanco, 275 F.3d 1199, 1204 (9th Cir.2002). As part of the registration process, manufacturers must submit a proposed label for EPA approval. 7 U.S.C. § 136(a)(1)(C); see also Nathan Kimmel, 275 F.3d at 1204; Worm v. American Cyanamid Co., 5 F.3d 744, 747 (4th Cir.1993) (manufacturers must submit draft label language addressing numerous topics including ingredients, directions for use, and adverse effects).
FIFRA does not prescribe the exact contents of pesticide labels, however, the EPA approves each label only after a careful review of the product data and draft label. 7 U.S.C. § 136a(c)(5); see also Taylor, 54 F.3d at 560; Worm, 5 F.3d at 747 (FIFRA establishes an involved process of EPA review culminating in approval of the label under which a pesticide may be marketed). After a label has been approved, generally, manufacturers are prohibited from changing the label without the consent of the EPA. 7 U.S.C. § 136j(a)(2)(A); see also Jarman v. United Indus. Corp., 98 F.Supp.2d 757, 759 (S.D.Miss.2000) (citing Hawkins v. Leslie's Pool Mart, Inc., 184 F.3d 244, 251 (3d Cir.1999)). Finally, FIFRA prohibits the knowing falsification of any pesticide registration application, including the falsification of any information relating to the testing of a pesticide. 7 U.S.C. § 136j(a)(2)(M); see also Nathan Kimmel, 275 F.3d at 1204.
As part of the 1972 amendments, Congress added an express preemption provision to FIFRA, which prohibits states from imposing labeling or packaging requirements that are in addition to, or different from, those required by FIFRA. 7 U.S.C. § 136v(b). As a result, state common law claims are preempted by FIFRA if the legal duty that forms the basis of the claim imposes a state labeling requirement *1125 that is different from or in addition to the requirements imposed by FIFRA. See Taylor, 54 F.3d at 560.[6] Accordingly, in addition to preempting direct claims alleging failure to warn or inadequate labeling and packaging, FIFRA also preempts indirect claims that would result in additional or different labeling requirements from those required by FIFRA. See, e.g., Dow Agrosciences LLC v. Bates, 332 F.3d 323, 329 (5th Cir.2003) (FIFRA preempts state law claims that either directly or indirectly impose different labeling requirements); see also Jarman, 98 F.Supp.2d at 763 (if the undeniable practical effect of the plaintiff's recovery would be the imposition of additional labeling standards not mandated by FIFRA, plaintiff's claim is preempted); Etcheverry v. Tri-Ag Serv., Inc., 22 Cal.4th 316, 93 Cal.Rptr.2d 36, 993 P.2d 366, 377 (2000) (when a claim, no matter how it is couched, boils down to an assertion that a label failed to warn the plaintiff, the claim is preempted by FIFRA). Finally, in the Ninth Circuit, claims premised upon allegations of an alleged fraud on the EPA, or on alleged violations of FIFRA's provisions or EPA regulations, are preempted. See Nathan Kimmel, 275 F.3d at 1208.

C. Preemption of Pre-1972 Exposure Claims

As noted, Plaintiffs contend that Shell's D-D and DBCP products were sold and used in Hawaii as early as 1955. Moreover, Plaintiffs contend, Dow's DBCP products were sold and used in Hawaii some time before 1964. Thus, Plaintiffs argue, because FIFRA's preemption clause was not effective until October of 1972, any of Plaintiffs claims arising out of exposure to Dow's and Shell's products from as early as 1955 through October 1972 are not preempted. In other words, according to Plaintiffs, this Court may not retroactively apply 7 U.S.C. § 136v(b) to preclude any of Plaintiffs' claims arising from a pre-October 1972 sale or use of Dow's and Shell's products. The Court disagrees.
First, this Court is guided by the rule that generally, a court applies the law in effect at the time the court renders its decision. See Southwest Center for Biological Diversity v. U.S. Dep't of Agriculture, 314 F.3d 1060 (9th Cir.2002). Moreover, applying FIFRA's preemption provision to claims arising from the sale or use of Shell's and Dow's products prior to October of 1972 does not amount to a retroactive application merely because the actions allegedly supporting the claims predate the 1972 amendment. See Arkansas-Platte, 959 F.2d at 160 (rejecting argument that application of post-1972 FIFRA to a claim that ripened before 1972 would be a retroactive application of the statute). Finally, this Court agrees with other Courts that have concluded that a jury verdict today on Plaintiffs' labeling or failure to warn based claims, irrespective of when *1126 Plaintiffs allege they were exposed to Shell's and Dow's products, would constitute the type of state regulation of pesticide labeling that is forbidden by FIFRA. See Arkansas-Platte, 959 F.2d at 161; Kennan v. Dow Chem. Co., 717 F.Supp. 799, 811 (M.D.Fla.1989).[7] Accordingly, to the extent that the Court finds Plaintiffs' state law claims are preempted by FIFRA, the claims are preempted regardless of whether they arose from exposure based on sales and/or use of Shell's and Dow's products prior to October of 1972.

D. Estoppel

Plaintiffs contend that Shell and Dow are estopped from relying on FIFRA preemption as a defense, because they intentionally concealed information about their respective products from Plaintiffs and the EPA. Plaintiffs' argument is to no avail. Although a failure to provide all relevant information to the EPA may violate FIFRA, FIFRA preemption is not dependent upon compliance with EPA regulations or FIFRA's provisions. See Dow Chem. Co. v. Ebling, 723 N.E.2d 881, aff'd in part, vacated in part on other grounds, 753 N.E.2d 633 (Ind.2001); see also Taylor, 54 F.3d at 561 (EPA performance in approving a pesticide label is irrelevant to the preemption determination). Thus, for purposes of the preemption determination, the question of whether the EPA had all of the necessary and available information to approve the labels for Shell's and Dow's products is irrelevant. In sum, even if Shell and Dow concealed information as alleged by Plaintiffs, they would not be estopped from relying on preemption as a defense to Plaintiffs' state law claims. See Reutzel v. Spartan Chem. Co., 903 F.Supp. 1272 (N.D.Iowa 1995) (alleged concealment of information from EPA does not estop a defendant from relying on preemption).[8]

E. Count I Negligence

Count I of the Third Amended Complaint alleges that Shell and Dow were negligent in storing, mixing, using, releasing, distributing, spraying, disposing, applying, designing, testing, studying, manufacturing, producing, monitoring, formulating, packaging, labeling, and delivering their respective products. (Pl. Third Am. Compl. ¶ 18.) Beyond the conclusory allegations of the complaint, Plaintiffs fail to offer any evidence that Shell or Dow stored, mixed, used, released, sprayed, disposed of, or applied their products at any time on Oahu. Moreover, Plaintiffs fail to offer evidence to support a negligent monitoring or delivery claim against either Shell or Dow. Accordingly, the Court grants Shell's and Dow's motions for summary judgment on Count I to the extent it alleges that they negligently stored, mixed, used, released, sprayed, disposed of, applied, delivered, or monitored their respective products. The remaining claims of Count I are addressed in more detail below.

1. Negligent Distribution

Plaintiffs assert that Dow negligently distributed its products in 1977. *1127 More specifically, Plaintiffs assert that Dow negligently distributed EDB in 1977 when a bulk container of Dow's EDB product erupted at Del Monte's Kunia plantation. (Pl. Memorandum in Opp. to Dow's Motion for Summary Judgment at 2.) As a result of the eruption, Plaintiffs allege, hundreds of gallons of EDB spilled onto the ground, and eventually moved into the surrounding air, sub-surface soils, and groundwater causing Plaintiffs injury. (Id.) In support of this claim, Plaintiffs submit evidence that there was an EDB spill in 1977 at the Del Monte Kunia plantation and that the spilled EDB came from a Dow container. (Pl. Resp. Stmt. in Opp. to Dow's Motion for Summary Judgment, Stanford Decl., Ex. H.)
Dow does not specifically address how or why this claim is preempted by FIFRA. Moreover, the Court does not see anything in the record before it suggesting that this claim is in any way a labeling or warning based claim. Accordingly, the Court finds that Plaintiffs' negligent distribution claim against Dow is not preempted by FIFRA. As a result, Dow's motion for summary judgment on Count I, to the extent it seeks dismissal of the negligent distribution claim, is denied. However, Plaintiffs submit absolutely no evidence to support a claim of negligent distribution against Shell. Accordingly, Shell is entitled to summary judgment on Count I to the extent it asserts a claim for negligent distribution of the Shell products.

2. Negligent Labeling and/or Packaging

The gravamen of Plaintiffs' negligent labeling and packaging claims is that Shell and Dow failed to include adequate warnings and/or instructions on their respective products' labels and/or packaging. For example, Plaintiffs allege that in labeling its products, Shell failed to consider the risks of air and water contamination posed by the products. (Shell's Concise Stmt. in Support of Summary Judgment on D-D, Declaration of Dale W. Lee ("Lee Decl."), Ex. B at 9.)[9] Indeed, Plaintiffs assert, Shell negligently labeled or packaged its products, because Shell provided deficient use instructions and technical information for its products. (Id.)[10] There is no question that such claims, which pose a direct challenge to the adequacy of a pesticide product's labels and/or packaging, fall into the category of claims preempted by FIFRA. See, e.g., Taylor, 54 F.3d at 560; accord Dahlman Farms. Inc. v. FMC Corp., 240 F.Supp.2d 1012, 1019 (D.Minn.2002) (negligent labeling claim is squarely preempted by FIFRA); Wright v. American Cyanamid Co., 599 N.W.2d 668, 671 (Iowa 1999) (negligence claims challenging information in pesticide product's label preempted). Accordingly, Shell's and Dow's motions for summary judgment on the negligent labeling and packaging claims stated in Count I are granted.

3. Negligent Design and/or Formulation[11]
*1128 Under Hawaii law, to establish a negligent design claim, Plaintiffs must prove, among other things, that Shell and Dow were negligent by not taking reasonable measures in designing their products to protect against a foreseeable risk of injury. See Tabieros v. Clark Equip. Co., 85 Hawai`i 336, 354, 944 P.2d 1279 (1997). Here, Plaintiffs assert that Shell's and Dow's products were negligently designed, because the products were volatile and highly persistent in soil and water. (Pl. Opp to Shell's Motion for Summary Judgment on D-D at 18; Pl. Opp. to Shell's Motion for Summary Judgment on DBCP at 14; Pl. Memorandum in Opp. to Dow's Motion for Summary Judgment, at 26.)[12] The essence of these claims is that because of Shell's and Dow's products' characteristics  i.e., volatility and persistence  the products were negligently designed for use as pesticides in and around populated areas on Central Oahu. In other words, Plaintiffs are not complaining that the products did not do what they were designed to do, but rather, that Plaintiffs should have been warned about what the products would do in light of their design. Such claims are effectively failure to warn claims that are preempted by FIFRA. See generally, Grenier, 96 F.3d at 564-65 (claim that a product is defectively designed because it was foreseeable it would be used in a particular way is an attack on the failure to warn against that use); Bates, 332 F.3d at 332 (design defect claim alleging that pesticide was unreasonably dangerous for use on soils with particular pH level is a disguised failure to warn claim).

4. Negligent Testing and/or Studying[13]
Claims for negligent testing that are based solely upon a manufacturers' testing or research practices are not preempted by FIFRA. See, e.g., Taylor, 54 F.3d at 561. However, negligent testing claims based on a failure to warn theory are preempted by FIFRA, because such claims require a showing that the manufacturer should have included additional or more clearly stated warnings. Id. A negligent testing claim will be deemed a disguised failure to warn claim if the manufacturer could remedy the problems that would have been revealed by adequate testing with alterations to the product's label. See Wright, 599 N.W.2d at 673. Thus, to determine whether Plaintiffs' negligent testing claims are based on a failure to warn theory or Shell's and Dow's research and testing practices, the Court examines Plaintiffs' testing allegations.
Plaintiffs contend that prior to marketing D-D and DBCP in Hawaii, Shell negligently failed to research whether *1129 exposure to the products caused cancer in laboratory animals and/or humans. (Pl. Resp. Stmt. in Opp to Shells' Motion for Summary Judgment on D-D, Stanford Decl., Ex. B at 60-62.) Further, Plaintiffs contend, Shell negligently failed to test for D-D and DBCP vapor in occupied areas on Oahu surrounding the locations where the products were applied. (Id. at 53-55, 58-59; see also Pl. Memorandum in Opp. to Shell's Motion for Summary Judgment on D-D at 5.) Behind these claims lies the assertion that if Shell had properly tested D-D and DBCP, it would have discovered information regarding exposure that could have been conveyed, in the form of warnings, to the users and/or Plaintiffs. In other words, the claims are not an independent attack on Shell's research or testing practices  i.e., how Shell tested D-D and DBCP, or whether the products were tested for proper function  but rather, they are claims based on a failure to warn theory. Consequently, the claims are preempted by FIFRA. See generally, Schuver v. E.I. DuPont de Nemours & Co., 546 N.W.2d 610 (Iowa), cert. denied, 519 U.S. 910, 117 S.Ct. 274, 136 L.Ed.2d 197 (1996), (FIFRA preempts inadequate testing claims that are merely another way of arguing that the product's labels should have warned against use in a certain location); Anderson v. Dow Agrosciences LLC, 262 F.Supp.2d. 1280, 1284-85 (W.D.Okla. 2003) (claim alleging that testing was negligent or inadequate because the product was not tested on soil in a particular geographic area is a disguised failure to warn claim).
As evidence in support of the alleged negligent testing claim against Dow, Plaintiffs submit a copy of Shell's Responses to Plaintiffs' Request for Admissions, (Pl. Resp. Stmt. in Opp. to Dow's Motion for Summary Judgment, Stanford Decl., Ex. B.) Of course, Shell's admissions and/or denials are not evidence against Dow. When asked about the discrepancy at oral argument, Plaintiffs' counsel attributed the submission of Shell's answers to oversight or misjudgment. Nonetheless, the record before the Court remains devoid of any admissible evidence to support Plaintiffs' negligent testing claim against Dow. Accordingly, Dow's motion for summary judgment on Plaintiffs' negligent testing claim is also granted.[14]

5. Negligent Manufacturing and/or Production[15]
Dow concedes, as a general proposition, that in many cases a negligent manufacturing claim is not preempted by FIFRA. The Court agrees. However, that is not enough to save Plaintiffs' negligent manufacturing claims in this case, because the record before the Court lacks any evidence to support such claims against either Shell or Dow. Indeed, when asked in Shell's interrogatories to explain the basis of the negligent manufacturing claim, Plaintiffs avoided a direct statement, and instead, resorted to repetition of various general allegations given in response to other interrogatories. *1130 (Shell's Concise Stmt. in Support of Summary Judgment on D-D, Lee Decl., Ex. B at 6-9.) Similarly, when asked at oral argument to articulate the negligent manufacturing claims against Shell and Dow, Plaintiffs' counsel responded only with vague conclusory allegations that such claims exist. Consequently, Shell's and Dow's motions for summary judgment on Plaintiffs' negligent manufacturing claims are granted.
In sum, Shell's motions for summary judgment on Count I of the Third Amended Complaint are granted and Count I is dismissed in its entirety. With respect to Dow, the Court grants Dow's motion for summary judgment on Count I only in part, and dismisses all of the claims in Count I except for the negligent distribution claim.

F. Count II Breach of Express and Implied Warranties

Count II of the Third Amended Complaint alleges that Shell and Dow breached express and implied warranties related to their respective products. (Pl. Third Am. Compl. ¶ 23.) FIFRA preempts express warranty claims when the alleged warranty statements do not vary from information provided by a manufacturer in the product labels or as part of other product information. Taylor, 54 F.3d at 556. However, an express warranty claim may be maintained if the alleged warranty statements fall outside of the scope of the product's label or other information. Id. at 563.
Here, the Court finds that both Shell and Dow are entitled to summary judgment on Plaintiffs' express warranty claims, not because of FIFRA preemption, but because there is no evidence in the record to support such claims. Plaintiffs do not articulate what, if any, express warranties were given by Shell or Dow in connection with the sale of their respective products. Moreover, there is no specification of the terms of the alleged warranties, nor are the sources of the warranties identified. Indeed, Plaintiffs' opposition is completely silent on this point. Accordingly, the Court grants Shell's and Dow's motions for summary judgment on Plaintiffs' express warranty claims.
Plaintiffs also contend that Shell and Dow breached implied warranties that their respective products were suited for use on Oahu's soil and climate. (Pl. Memorandum in Opp. to Shell's Motion for Summary Judgment on D-D at 16;Pl. Memorandum in Opp. to Dow's Motion for Summary Judgment at 14.) Such implied warranty claims are preempted by FIFRA. See e.g., Taylor, 54 F.3d at 563; see also National Bank of Commerce v. Dow Chem. Co., 165 F.3d 602, 608 (8th Cir.1999) (recognizing that if an implied warranty claim survived FIFRA preemption, it would result in additional or different requirements for pesticide labeling or packaging); Papas, 985 F.2d at 519-20 (claim based on implied warranty imposed by state law would result in impermissible imposition of additional or different labeling requirements); Anderson, 262 F.Supp.2d at 1288-89 (breach of warranty claims based on allegations that a pesticide label inadequately warned against product use in a particular state's soil are preempted by FIFRA); Johnson v. Monsanto Chem. Co., 129 F.Supp.2d 189, 194 (N.D.N.Y.2001) (implied warranty claims are predicated on inadequacy of labeling, and thus, are preempted by FIFRA).[16] *1131 Accordingly, Shell's and Dow's motions for summary judgment on Plaintiffs' implied warranty claims are also granted.

G. Count III Strict Products Liability

In Count III, Plaintiffs allege that Shell and Dow are strictly liable to Plaintiffs, because their respective products were defectively designed, formulated, produced and manufactured. (Pl. Third Am. Compl. ¶ 25).

1. Strict Liability Design Defect Claims

According to Plaintiffs, Shell's and Dow's products were defectively designed, because they are volatile and highly persistent in the soil. (Shell's Concise Stmt. in Support of Summary Judgment on D-D, Lee Decl., Ex. B at 11-12;[17] Pl. Opp Memorandum to Dow's Motion for Summary Judgment at 26.)[18] Generally, a state law strict liability design defect claim is not preempted by FIFRA if it is not based on an alleged inadequacy in the product's labeling or packaging. See, e.g., Ebling, 723 N.E.2d at 900. However, the mere labeling of a claim as a design defect claim will not automatically avoid FIFRA preemption. Grenier, 96 F.3d at 564.
Under Hawaii law, to impose strict liability because of a design defect, a plaintiff must prove that the product was used in an intended or reasonably foreseeable manner, that the manufacturer breached its duty by producing a dangerously defective product, and that the defect was the proximate cause of plaintiff's injuries. See, e.g., Lau v. Allied Wholesale, Inc., 82 Hawai`i 428, 440, 922 P.2d 1041 (1996) (citing Ontai v. Straub Clinic & Hosp., Inc., 66 Haw. 237, 659 P.2d 734 (1983)). To establish that a product is dangerously defective, a plaintiff may use one of three tests: the consumer expectations test; the risk-utility test; and the latent danger test. See Acoba v. General Tire, Inc., 92 Hawai`i 1, 17, 986 P.2d 288 (1999).[19]
Under the consumer expectations test, a product is defectively designed if the plaintiff establishes that it failed to perform as safely as an ordinary consumer would expect when used in an intended or reasonably foreseeable manner. See Ontai, 66 Haw. at 240-41, 659 P.2d 734. Under the risk-utility test, a product is defective in design if the product's design proximately caused the plaintiff's injury and the manufacturer fails to *1132 establish, in light of the relevant factors, that, on balance, the benefits of the challenged design outweigh the risks inherent in the design. See Ontai, 659 P.2d at 741. The factors to be balanced include: (1) the usefulness and desirability of the product; (2) the safety aspects of the product; (3) the availability of a substitute product which would meet the same need and not be as unsafe; (4) the manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility; (5) the user's ability to avoid danger by the exercise of care in the use of the product; (6) the user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product, or of the existence of suitable warnings or instructions; and (7) the feasability, on the part of the manufacturer, of spreading the loss by setting the prices of the product or carrying liability insurance. See Tabieros, 85 Hawai'i at 366, 944 P.2d 1279 (citing Larsen v. Pacesetter Sys., Inc., 74 Haw. 1, 837 P.2d 1273 (1992)); see also Wagatsuma v. Patch, 10 Haw.App. 547, 566-67, 879 P.2d 572 (1994), cert. denied, 77 Hawai`i 373, 884 P.2d 1149 (1994).
In this case, the Court finds that Plaintiffs are foreclosed from establishing a strict liability design defect claim through use of the consumer expectations test, because such a claim is preempted by FIFRA. See Papike v. Tambrands, Inc., 107 F.3d 737 (9th Cir.), cert. denied, 522 U.S. 862, 118 S.Ct. 166, 139 L.Ed.2d 110 (1997) (consumer cannot expect a product to perform more safely than government mandated warnings); see also Oken v. Monsanto Co., 218 F.Supp.2d 1361 (S.D.Fla.2002) (consumer expectations test necessarily involves consideration of warnings given to the public, and thus, a design defect claim on this theory is preempted by FIFRA); Eriksen v. Mobay Corp., 110 Wash.App. 332, 41 P.3d 488 (2002) (design defect claim based on consumer expectations theory preempted by FIFRA); Reece v. Good Samaritan Hosp., 90 Wash.App. 574, 953 P.2d 117 (1998) (design defect claim based on consumer expectations test preempted); but see Arnold v. Dow Chem. Co., 91 Cal.App.4th 698, 110 Cal.Rptr.2d 722 (2001) (rejecting application of Papike to preempt design defect consumer expectations claim); Ebling, 723 N.E.2d at 902 (same).
Similarly, the Court finds that Plaintiffs may not use Hawaii's version of the risk-utility test to prove a design defect in this case. Unlike some jurisdictions, Hawaii's version of the risk-utility test contemplates that the jury will consider the adequacy of a product's warnings in weighing the risks of a product against the product's benefits. See, e.g., Tabieros, 85 Hawai'i at 366, 944 P.2d 1279 (citing sixth factor of risk-utility test which permits consideration of the adequacy of a product's warnings). This consideration of a pesticide product's warnings is precisely what is prohibited by FIFRA. Accordingly, Plaintiffs are precluded from proving a strict liability design defect claim based on Hawaii's articulation of the risk-utility test, because such a claim is preempted by FIFRA.

2. Strict Liability Manufacturing Defect Claims

Plaintiffs also allege that Shell and Dow are strictly liable for manufacturing defects in their respective products. A product is defective by virtue of a manufacturing defect when the product departs from its intended design. More specifically, under Hawaii law, to establish a manufacturing defect, Plaintiffs must prove that Shell's and Dow's products did not conform to the quality of other Shell and Dow products at the manufacturing stage. See Wagatsuma, 10 Haw.App. at 564, n. 6, 879 *1133 P.2d 572. Here, Plaintiffs fail to submit any evidence to support such claims. For example, when asked to articulate the manufacturing defect claim, and explain the basis underlying it, Plaintiffs avoided a direct response, and resorted to repetition of generalized allegations made in response to other unrelated interrogatories. (Shell's Concise Stmt. in Support of Summary Judgment on D-D, Lee Decl., Ex. B at 12-13, 15-16.) Accordingly, Shell and Dow are entitled to summary judgment on Plaintiffs' strict liability manufacturing defect claims.[20]

H. Count IV Failure to Warn

Count IV of the Third Amended Complaint alleges that Shell and Dow failed to provide sufficient and adequate warnings, instructions, safeguards and notices to Del Monte, Dole and Libby concerning the release, storage, use, application, mixture, and distribution of their products. (Pl. Third Am. Compl. ¶ 27.) In order to prevail on these claims, Plaintiffs must demonstrate that the information on the labels and/or packaging of Shell's and Dow's products was insufficient, and that different labels or packaging were required to protect Plaintiffs. In other words, in assessing these claims, the jury would be asked to examine the adequacy of Shell's and Dow's products' labeling and packaging. Such an inquiry is precisely what is prohibited by FIFRA, and thus, the failure to warn claims are preempted.
Further, Plaintiffs allege that Shell and Dow, as well as Dole, Libby and the Del Monte Defendants, failed to provide adequate warnings, instructions, safeguards and notices to Plaintiffs and the general public regarding the allegedly lethal dangers of the EDB, D-D, and DBCP products. (Pl. Third Am. Compl. ¶ 28.) According to Plaintiffs, these claims survive FIFRA preemption, because Plaintiffs never saw the products' labels or packaging, and thus, the claims are not premised on the adequacy of warnings. In other words, according to Plaintiffs, FIFRA does not preempt failure to warn claims brought by innocent bystanders who have never seen or used the allegedly offending products. The Court disagrees.
For Shell and Dow to meet the duty to warn that Plaintiffs allege exists, Shell and Dow would be forced to disseminate to Plaintiffs, either directly or indirectly through product users, some written product information and/or warnings. As a result, the effect of these claims would be state law imposition of additional or different labeling and/or packaging requirements for Shell's and Dow's products than those required by FIFRA. Such a result is prohibited, and thus, the claims are preempted. See, e.g., Eyl v. Ciba-Geigy Corp., 264 Neb. 582, 650 N.W.2d 744 (2002), cert. denied, ___ U.S. ___, 123 S.Ct. 2642, 156 L.Ed.2d 657 (2003) (claim that manufacturer failed to warn general public of pesticide hazards is a preempted labeling claim); Ebling, 723 N.E.2d at 896 (claim that pesticide registrant had a duty to provide purchasers with sufficient product labeling or information for downstream distribution of warnings to non-purchasers is a challenge to product labeling); but see Burt v. Fumigation Serv. & Supply, Inc., 926 F.Supp. 624 (W.D.Mich.1996) (bystanders' *1134 claim that pesticide manufacturer failed to warn non-users is not preempted by FIFRA).
Additionally, in the Ninth Circuit, a failure to warn claim against a pesticide user such as Dole is preempted by FIFRA for the same reasons that it is preempted against the manufacturers. According to the Ninth Circuit, the FIFRA preemption analysis focuses not on whom the legal duty is imposed, but rather, on whether the legal duty sought to be imposed constitutes a state law requirement to provide information different from, or in addition to, that required by FIFRA. See Taylor, 54 F.3d at 561, fnt. 3. Thus, if a jury concluded that Dole had a duty to warn Plaintiffs about the allegedly harmful effects of the pesticide products it used, that decision would be tantamount to state imposition of labeling or warning requirements different from, or in addition to, those required by FIFRA. Such state regulation of pesticide labeling is prohibited by FIFRA, and hence, Plaintiffs' failure to warn claim against Dole is also preempted.[21]
In sum, Shell's, Dow's and Dole's motions for summary judgment on Count IV are granted on the ground that the claims stated therein are preempted by FIFRA.[22]

I. Count VI Negligent Infliction of Emotional Suffering & Count IX Wrongful Death

In Count VI, Plaintiffs allege that they suffered "shock, pain and suffering, and mental and emotional distress by witnessing the illnesses, injuries, and or wrongful deaths of their family members." (Pl. Third Am. Compl. ¶ 32.) In Count IX, Plaintiffs allege a wrongful death claim. (Pl. Third Am. Compl. ¶¶ 38-43.) According to Dow, these claims are derivative in nature and must be dismissed, because all of Plaintiffs' substantive claims are preempted by FIFRA. Dow is correct that Counts VI and IX are derivative of Plaintiffs' substantive claims. See Torres v. Northwest Eng'g Co., 86 Hawai'i 383, 402-404, 949 P.2d 1004 (1997) (wrongful death and negligent infliction of emotional distress claims are derivative of substantive claims). Consequently, because the Court finds that the remaining substantive counts of the Third Amended Complaint are dismissed as against Shell, Plaintiffs may not maintain these derivative causes of action against Shell. However, because Dow's motion for summary judgment on Plaintiffs' negligent distribution claim in Count I is denied, a substantive claim against Dow remains, and thus, the Court denies Dow's motion for summary judgment on Counts VI and IX.

CONCLUSION
Based on the foregoing, Shell's motions for summary judgment on D-D and DBCP are granted in their entirety, and the remaining counts of Plaintiffs' Third Amended Complaint (Counts I, II, III, IV, VI, and IX) are dismissed as against Shell. Further, Dow's motion for summary judgment is granted in part, and denied in part. More specifically, the Court grants Dow's motion for summary judgment on *1135 Counts II, III, and IV. With respect to Count I, Dow's motion for summary judgment is granted as to all claims stated therein except for Plaintiffs' negligent distribution claim. In addition, Dow's motion for summary judgment on the derivative counts, VI and IX, is denied. Finally, Dole's motion for summary judgment on Count IV of the Third Amended Complaint is granted on the ground that the claim is preempted by FIFRA. As a result, Count IV, as against Dole, the Del Monte Defendants and Libby, is dismissed.
IT IS SO ORDERED.
NOTES
[1] Nestle USA, Inc., successor to Libby, McNeill & Libby ("Libby"), and Del Monte Fresh Produce (Hawaii) Inc., Del Monte Corporation, and Del Monte Foods Company ("Del Monte" or the "Del Monte Defendants") join Dole's motion. Plaintiffs' "objections" to the joinders of Libby and the Del Monte Defendants are overruled, and the Court finds the opposition is without merit. In addition, Great Lakes joined Dole's motion despite its separate motion for summary judgment on Count IV. Plaintiffs' objection and opposition to Great Lakes' joinder is rendered moot by the Court's granting of Great Lakes' motion for summary judgment on Count IV in a companion decision.
[2] The Court has also considered the parties' various objections to the evidence in support of and in opposition to the motions for summary judgment. The Court overrules the majority of the objections. Moreover, to the extent that the Court finds an objection is sustained, that ruling has no impact on the outcome of the instant motions. Accordingly, the Court will not address each objection individually.
[3] Shell sold DBCP under the trade name "Nemagon."
[4] The Dow products at issue include: Fumazone, which is a DBCP based product, Vidden D, a D-D based product, DowFume W-85, an EDB based product, Telone, Telone II, and Dowside. Other than the DBCP based products, Plaintiffs neglect to allege when any of Dow's other products were first sold in Hawaii.
[5] According to Plaintiffs, Dole's "use of DBCP began on an experimental basis in 1955, with more extensive use plantation wide beginning in 1959." There are no allegations regarding when Dole began using the other products at issue in this case, nor are there allegations addressing when Libby and the Del Monte Defendants began using the products.
[6] Every federal appellate court that has considered the issue has reached the same conclusion. See, e.g., Grenier v. Vermont Log Bldgs., Inc., 96 F.3d 559 (1st Cir.1996); Hawkins v. Leslie's Pool Mart, Inc., 184 F.3d 244 (3d Cir.1999); Worm v. American Cyanamid Co., 5 F.3d 744 (4th Cir.1993); MacDonald v. Monsanto, 27 F.3d 1021 (5th Cir.1994); Shaw v. Dow Brands, 994 F.2d 364 (7th Cir.1993); Bice v. Leslie's Poolmart, Inc., 39 F.3d 887 (8th Cir.1994); Arkansas-Platte & Gulf P'ship v. Van Waters & Rogers, Inc., 959 F.2d 158, 159 (10th Cir.), vacated by, 506 U.S. 910, 113 S.Ct. 314, 121 L.Ed.2d 235 (1992), on remand adhered to by, 981 F.2d 1177 (10th Cir.1993); Papas v. Upjohn Co., 985 F.2d 516 (11th Cir. 1993). Accordingly, Plaintiffs' reliance on Ferebee v. Chevron Chem. Co., 736 F.2d 1529 (D.C.Cir.1984) for the proposition that FIFRA does not preempt state law labeling and/or failure to warn claims is misplaced, because that decision is no longer recognized as good law. See Etcheverry v. Tri-Ag Serv., Inc., 22 Cal.4th 316, 93 Cal.Rptr.2d 36, 993 P.2d 366, 371-72 (2000).
[7] The Court finds the contrary holdings of Gibson v. Dow Chem. Co., 842 F.Supp. 938 (E.D.Ky.1992) and DiPetrillo v. Dow Chem. Co., 729 A.2d 677 (R.I.1999) unpersuasive.
[8] This conclusion is consistent with Ninth Circuit law holding that state law claims based on an alleged fraud on the EPA are preempted by FIFRA. See Nathan Kimmel, 275 F.3d at 1208. Moreover, it is consistent with the Ninth Circuit's holding that analyzing the performance of the EPA is neither a function of the federal courts, nor relevant to the preemption determination. Taylor, 54 F.3d at 561. Thus, this Court notes its disagreement with Roberson v. E.I. Dupont De Nemours & Co., 863 F.Supp. 929 (W.D.Ark.1994) holding that the concealment of facts from the EPA does estop a defendant from relying on FIFRA preemption.
[9] In response to an interrogatory asking Plaintiffs to state the factual basis for the negligence claims, Plaintiffs stated that the "Shell defendants understood the risks of contamination of water and air that its products presented, and it could and should have taken those risks into consideration in its product labeling and in the information supplied to users and regulators."
[10] In further response to the negligence interrogatory, Plaintiffs stated that, "[n]evertheless, [the] Shell Defendants provided use instructions, labels and technical information that was deficient and that actually instructed users to dispose of excess or waste product and packing by burial."
[11] The Court construes Plaintiffs' negligent formulation claim as synonymous with the negligent design claim.
[12] With respect to Shell, Plaintiffs assert that Shell's products were "defectively designed to be both highly persistent in soil and water and dangerously volatile, resulting in airborne releases." With respect to Dow, Plaintiffs assert "Dow knew or should have known as a chemical designer ... that DBCP had pernicious propensities in soil, water and air; that it had grievous toxicological effects...." Plaintiffs do not make any specific design defect allegations with respect to the other Dow products at issue in this matter.
[13] The Court construes the negligent studying claim as synonymous with the negligent testing claim. Further, as a threshold matter, Shell and Dow argue that Plaintiffs cannot state "independent" negligent testing claims, because such claims are essentially a variation on a negligent design or failure to warn claim. Accordingly, Shell and Dow argue, because Plaintiffs' failure to warn and negligent design claims are preempted, so to are Plaintiffs' negligent testing claims. In light of the Court's conclusion, as set forth below, that Shell and Dow are entitled to summary judgment on Plaintiffs' negligent testing claims on other grounds, there is no need to address this argument.
[14] Plaintiffs contend that Dow's motion is the "sister motion" to Shell's motion for summary judgment on DBCP, and that "much of the relevant evidence [against Dow] is the same [as against Shell]." Accordingly, Plaintiffs purport to incorporate their oppositions to Shell's motions into their opposition to Dow's motion. (Pl. Memorandum in Opp. to Dow's Motion for Summary Judgment at 1.) As a result, the instant evidentiary oversight or misjudgment likely arose out of Plaintiffs' mistaken view that evidence against Shell equates to evidence against Dow. In any event, even if, as Plaintiffs represented at oral argument, the negligent testing claims against Dow are the same as those stated against Shell, as explained above, the claims would be preempted by FIFRA.
[15] The Court construes the negligent production claim as synonymous with the negligent manufacturing claim.
[16] Plaintiffs reliance on Wright v. Dow Chem. USA, 845 F.Supp. 503 (M.D.Tenn.1993) which held that implied warranty claims are not preempted by FIFRA is misplaced. First, Wright represents a minority view. Secondly, and more importantly, Taylor, not Wright, is the controlling law in this Circuit.
[17] Plaintiffs describe the ways in which Shell's products were defectively designed, by asserting that Shell's products "were designed to be toxic to life and designed to be pumped into the soil and air with virtually no control or means of restricting the path of the molecules once that had occurred." Further, Plaintiffs assert, the Shell products were defectively designed because a "significant portion of the injected product would volatilize into the atmosphere" even though the "vapor is dense [with] a known ability and propensity to travel, depending on meteorological conditions, to occupied areas."
[18] With respect to Dow, Plaintiffs assert that DBCP was defectively designed, because it "had pernicious propensities in soil, water and air" and "that it had grievous toxicological effects." In addition, Plaintiffs appear to allege that DBCP was defectively designed because of the addition of epichlorohydrin. Plaintiffs fail to articulate a design defect claim with respect to Dow's D-D and EDB based products.
[19] Plaintiffs' counsel stated at oral argument that Plaintiffs are not asserting a design defect based on a latent danger. In any event, it is clear that such a claim would be preempted by FIFRA, because it would require consideration of the adequacy of product warnings. See, e.g., Tabieros, 85 Hawai`i at 367, 944 P.2d 1279 (a product is defective in design under the latent danger test if, among other things, the manufacturer fails to give adequate warnings of the danger).
[20] Counsel for Shell and Dow suggested at oral argument that Plaintiffs' allegations regarding the addition of epichlorohydrin or TCP to Shell's and/or Dow's products may, in Plaintiffs' view, provide the basis for Plaintiffs' manufacturing defect claims. However, as counsel correctly noted, to the extent that these assertions do indeed underlie Plaintiffs' manufacturing defect claims, the claims fail, because the addition of the cited ingredients was intentional, and not a departure from, or non-conformance with, the normal manufacturing process.
[21] The Court recognizes that courts in other jurisdictions have reached a contrary conclusion. See, e.g., Dow Chem. Co. v. Ebling, 753 N.E.2d 633 (Ind.2001) (holding that failure to warn claims against pesticide applicator are not preempted by FIFRA). However, in this court, Ninth Circuit law is controlling for purposes of the preemption analysis, and that law clearly preempts Plaintiffs' failure to warn claim against Dole, and joining defendants Libby and Del Monte.
[22] Given the conclusion that Count IV is preempted by FIFRA as against Dole, Libby and the Del Monte Defendants, there no need to address Dole's additional arguments for dismissal.